Franklin,
January,
1831.

### Elijah Payne vs. Shadrach Hathaway.

Presumption of payment, from lapse of time, cannot be claimed by a defendant on demurrer to a bill in chancery.

The defendant must demur to that part of the bill which claims a discovery, if he intends to object to it in argument.

The statute of limitations does not run against an equity founded upon a subsisting trust, nor against an equity founded on a fraud,while the person against whom the equity is claimed keeps the fraud concealed from the party claiming the equity.

In such case a plea of the statute of limitations must be accompanied with an answer to the parts of the bill which charge such fraud or trust.

Where a creditor extended an execution on his debtor's lands which were encumbered with a mortgage to a third person ; and afterwards, on failure of the debtor to pay the amount due on said mortgage, according to a decree of foreclosure made in the case, the creditor paid the same to the mortgagee, it was held, on demurrer to a bill brought by the mortgagee of the levying creditor, of whom the creditor obtained the money, against the grantee of the debtor, to recover for the amount so paid,

That the creditor need not be joined as orator, nor the debtor as respondent ;

That the payment of the money by the creditor to remove the incumbrance from the lands levied on, was not a voluntary payment, especially, as in this case, when the lands were worth much more than the amount which had been so paid; and

That there was equity in the bill.—In this case the levy of the execution had been decided to be void by reason of some irregularity in the proceedings.

This was a suit in chancery, and was set down for a hearing at the present term on demurrer for want of equity, and want of proper parties, also on a plea of the statute of limitations filed by the respondent.

The prominent allegations in the bill were, That on the 8th of October, 1803, Silas Hathaway was seized in fee of the lands described in the bill, lying in Swanton ; and at the same time was justly indebted to Samuel Hitchcock and Abel Allis in the sum of thirty thousand dollars ; that, on that day, Hitchcock and Allis attached the land ; that, on the last Monday in August, 1805, they recovered a judgement in said action for $31,127,29, and took execution thereon on the ninth of September, 1805 ; that they levied on the lands, January 8th, 1806, and completed the levy on the 7th of February following,and recorded the execution

on the 9th of the same month ; that, on the 20th of September,
1803, Silas Hathaway mortgaged the same lands to Simeon Hath-
away, for the sum of $2,000 ; that a bill of foreclosure had been
filed to foreclose this mortgage, and a decree obtained, which
would have expired on the 1st of January, 1807 ; that Silas Hath-
away neglected to redeem till 30th day of December, 1806, when
Hitchcock and Allis paid the redemption money to Simeon
Hathaway, amounting to the sum of $2464,44, and gave notice
to the tenants, and requested them to attorn to them, the said
Hitchcock and Allis, and caused said mortgage deed to be dis-
charged of record ; that the plaintiff, and those for whom he claims
advanced the money to Hitchcock and Allis to enable them to
redeem the mortgage ; that on the 29th of December, 1806,
Hitchcock and Allis executed their note to the plaintiff for the
money advanced, and a mortgage deed of the same land to se-
cure its repayment ; that, after the service of the attachment, and
after the judgement in favor of Hitchcock and Allis, viz. on the
12th of September, 1805, Silas Hathaway conveyed the lands to
the defendant, *Shadrach Hathaway*, fraudulently to defeat the
judgement ; that on the same 12th of September, 1805, *Sha-
drach Hathaway*, the defendant, executed an accountable receipt
for the deed, thereby promising to account for, or reconvey the
lands, which was put on record November 23d, 1810 ; that, on
the 21st of November, 1810, Silas Hathaway executed another
deed of the same lands to *Shadrach Hathaway*, who now held
said lands discharged from said mortgage deed ; that the money
due from Hitchcock and Allis to the plaintiff, and those for whom
the plaintiff claims, was never repaid by Hitchcock and Allis ; but
they became bankrupt and were wholly unable to make the repay-
ment ; that on the 11th October, 1810, at the request of those for
whom the plaintiff claimed, he conveyed the premises to John
Curtis in trust, that he should sell the lands, and, at the time of
sale, should secure by mortgage the respective claims of those,
who had advanced the money to Hitchcock and Allis, and for
whom the plaintiff now acted ; and the deed was recorded 11th
October, 1810 ; that defendant, *Shadrach Hathaway*, then was in
possession, holding adversely to the plaintiff and those under
whom he claimed, whereby the deed from plaintiff to Curtis was
rendered void ; that said Curtis, on the 7th April, 1815, became
insolvent, and was then committed a prisoner to the common jail
in St. Albans ; that in that situation the defendant, knowing him
to be utterly insolvent, and well knowing the trusts contained in

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

the deed from the plaintiff to said Curtis, but intending to cheat and defraud the plaintiff, and those for whom he acted, on that day procured a deed from said Curtis to himself of the said land ; that the plaintiff, on the 1st August, 1821, commenced sundry actions of ejectment for the recovery of said lands against the defendant, *Shadrach Hathaway*, and the tenants under him on the said lands; that the defendant set up as a defence in those suits, that the levy was void : also that plaintiff had parted with his title, by said deed to John Curtis, and that the same title was vested in him, the defendant, by said deed from said Curtis to him the said *Shadrach Hathaway*, which deeds the plaintiff alleges to be void by reason of the said adverse possession, and the non-fulfilment of the trusts and conditions in said deeds contained ; that, if said deeds are not void, yet the defendant, by accepting the said deed from Curtis, had become bound in equity to fulfil said trusts, or to reconvey said lands to the orator.

*The bill prayed*, that *Shadrach Hathaway* should be enjoined not to set up said matters in defence, nor to collect or receive any rents due on the lands ; that a receiver be appointed ; and that he be decreed to release to the orator his said title, or pay the amount and interest of the sums paid by Hitchcock and Allis for the redemption of Simeon Hathaway's mortgage, and pay the costs in the ejectments.

After reading the papers, a question of practice was submitted to the Court, which party should go forward in argument. The Court decided that the defendant should go forward in support of his demurrer and plea.

*C. Adams, for demurrant.*—If the orator has a legal title, his claim is good at law ; and it is well settled that, when orator has an adequate remedy at law, the courts of chancery will not interfere.—*Mitford*, 111, 114; *Cooper*, 123, 124, 126; 3 *Atk.* 740, *Parry* vs. *Owen*; 3 *Ves. Jr.* 4, *Loker* vs. *Rolle*; 3 *Ves. Jr.* 343, *Rives* vs. *Rives*.

It is not stated, nor does it appear, that any claim of title by the orator was rendered ineffectual by any act of the defendant. The taking the deed from Silas Hathaway could not affect the orator's claim, if the proceedings under which he claims had been regular. The deeds of the orator to John Curtis, and from Curtis to the defendant, cannot be set up against any legal claim of orator. This point was expressly decided in *Paine* vs. *Webster et al.* 1 *Ver. Rep.* 101. The broad question then arises, whether, if a

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

creditor attempts to levy his execution upon the land of his debtor, and fails by his *own* fault, he has any relief in equity ? We contend he has not.

The payment of the mortgage to Simeon Hathaway by Hitchcock and Allis, created no right in them independent of the levy. When Hitchcock and Allis levied their execution, they had a right to include the mortgage, and having taken land equal in value to the mortgage, it became a fund for its payment ; for the application of which they were bound ; and herein all equity is excluded. Their right to repayment of the mortgage money is not revived by the failure of title by their levy. If the payment was not made in the character of claimants of the mortgaged property, it was a voluntary payment, which creates no liability.—1 *Term Rep.* 20, *Stokes* vs. *Lewis ;* 8 *Term Rep.* 613, *per Lord Kenyon* in *Child* vs. *Morley ;* 1 *Esp. Dig.* 31, 176.

Hitchcock and Allis cannot be considered as the assignees of Simeon Hathaway, by the payment of his mortgage. If they had taken a formal assignment from Simeon Hathaway no title thus acquired would have passed to the orator by their previous mortgage to him.

The orator has no right to call on the defendant to answer, whether the deeds of orator to Curtis, and Curtis to defendants were fraudulent. 1. Because orator has shown no interest in the land. 2d. Because it would be unavailing inasmuch as the deeds are ineffectual against orator's claim, if he had any. 3d. Because defendant cannot be compelled to answer enquiries by which he may incur a forfeiture.—2 *Ves.* 243, *Brownsword* vs. *Edwards ;* 1 *Ves.* 246, *East-India Co.* vs. *Campbell ;* 1 *Atk.* 450, *Earl of Suffolk* vs. *Green et. al. ;* 2 *Atk.* 392, *Chauncey* vs. * * * * * * * ; 3 *Atk.* 453, 457, * * * * * vs. *Marmaduke.*

If the orator was considered as the assignee of Simeon Hathaway this bill would not entile him to any relief. In that case the defendant would not be barred by the decree, as he was not a party to the bill. Orator would be compelled to pursue his claim on the original mortgage, and show that Simeon Hathaway had been damnified ; and it would be competent for the defendant to show the note to Robinson, on account of which the mortgage was given to Simeon Hathaway, to have been paid by Silas Hathaway.

Orator has no equitable claim independent of his title. It is not certain that orator's money went to pay off the mortgage, but, if it did, it cannot be contended, that a voluntary payment will cre-

FRANKLIN,
January,
1831.

Payne
*vs*
Hathaway.

ate any claim.   When a second mortgagee pays off a prior mort-gage, he may hold on upon the estate.   So when tenant for life pays an outstanding claim, it is said that a claim arises: but in these cases, the persons are in by virtue of a title.

The bill is defective for want of proper parties.   Silas Hatha-way ought to have been joined.   And if there ever was any inter-est in Hitchcock and Allis it now remains in them or their heirs.

The orator is barred by the statute of limitations.   He cannot claim any greater right, than if he had been assignee of Simeon Hathaway's mortgage ; and, in that case, he would have been barred.—*Mitford*, 212 ; *Cooper*, 251 ; 3 *P. W.* 309, *Wyck* vs. *East-India Co* ; 3 *Atk.* 225, *Aggas* vs. *Pecknill* ; 2 *Atk.* 395, *Lacon* vs. *Lacon* ; 3 *Br. P. C.* 305, *Earl of Stafford* vs. *Blakely* ; 3 *Brown C. Rep.* 639.

*C. Marsh, and Bailey, for orator.*—I.  What can be more equita-ble than, that he, who holds the lands, should pay off the incum-brance ; or, if he do not elect to pay the mortgage money, that he should surrender the title, which must have been lost, but for the payment made by those, under whom the plaintiff claims ? Hitchcock and Allis paid the money in good faith, verily believ-ing they had the title ; and, probably, the defendant neglected the payment from the same view of the subject.   How can he then say, with a good conscience, *you* shall pay the incumbrance and *I* will hold the land discharged from it, but will not refund the payment ?

Defendant recognizes this payment, by continuing to enjoy the possession of the land, and receive the rents and profits in its un-incumbered state.   That is, by these acts he avails himself of the benefit of the payment made by the plaintiff, and, therefore, ought to refund the money.

It is true, there having been no previous request, or subsequent promise, to pay, no action at law will lie to recover back the mon-ey from defendant ; but it is the peculiar province of equity to compel the party to do justice to his opponent, in cases where the law affords no remedy ; and that is precisely the present case. " A feme covert having a separate estate borrows money on her " own bond, which is void ; the separate estate is liable."—*Nor-ton* vs. *Turvill*, 2 *P. Wms.* 144.   Had the title remained in Si-las Hathaway to this day, notwithstanding the levy, and the ora-tor, or those under whom he claims, had, as in this case, paid the redemption money ; it would then, as now, have been true, that

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

there having been no previous request or subsequent promise, no action would lie at law to recover back the money. It would not be money paid by mistake, that is, a mistake of facts, but a mistake in law, for which no action at law would lie ; and yet the inequity of holding the land,and enjoying the benefit of the payment, is so apparent, that the Court would interpose its authority, and decree the money to be refunded.

The bill charges defendant with fraud practiced on the plaintiff and those under whom he claims in obtaining the deed of 12th September, 1805, and with executing, at the same time, an accountable receipt for the deed ; and with a like fraud in taking the deed of 21st November, 1810. Thus, while the orator and those under whom ho claims stand in the light of *bona fide* judgement creditors to Silas Hathaway, the defendant, by the terms of the bill, and for every purpose of this demurrer, is a mere fraudulent purchaser attempting to defraud them of their just debt. And yet it is contended, that this fraudulent purchaser, on account of the informality in the plaintiff's levy, is not only to hold the land, but also to retain the benefit of the redemption made by, and at the expense of, the plaintiff, without refunding the money ; and this by the sanction of a court of equity.

By accepting the deed of the 7th April, 1815, from Curtis, defendant recognizes the plaintiff's right ; and not only so, but, by assuming Curtis' title, which was a trust estate conditioned for the payment of this very debt, he, at least, impliedly contracts to pay the plaintiff the money, which by this bill he seeks to recover. It is no answer to this, that defendant failed to establish his title at law under this deed, because he had not executed the trust. This failure was his own fault ; and the failure was the reason why he could not hold under the deed. He cannot thus take advantage of his own wrong, or thereby prejudice the *cestuy que trust.* —3 *P. Wms.* 215. By accepting the deed, he assumed the liability of executing the trust declared in the deed to Curtis, and, as he still holds the land, nothing has occurred to discharge him from this liability. "If a purchaser has notice of a trust at the time of " purchase,he himself becomes a trustee, notwithstanding the con- " sideration he has paid."—1 *Johns. C. R.* 566,*Murray & Winter* vs. *Ballou & Hunt.* " Where trustees have accepted the trust,and " entered on the execution of it, they cannot afterwards, with- " out the consent of the *cestuy que trust,* or the direction of the " court, surrender or discharge themselves of the trust." " The " vested interest of a *cestuy que trust* cannot be impaired or des-

CC

FRANKLIN,
January,
1831.

Payne
vs
Hathaway.

"troyed by the voluntary act of the trustee; but the trust will "follow the land in the hands of the person, to whom it has been "conveyed by the trustee with knowledge of the trust."—4 *Johns. C. R.* 136, 370; 6 *J. C. R.* 398. Thus it appears by the allegations in the bill, that the defendant stands in the light of a trustee to the plaintiff, and those for whose benefit he claims. And the present bill may be considered merely as an attempt to call him to account for the trust estate in his hands. It may be said, that he did not intend, in taking the deed from Curtis, to subject himself to the trusts declared in the deed to Curtis. It may be admitted, that, instead of honestly intending to execute the trusts, he designed to use the title to defraud the *cestuy que trust.* Yet the case of *Murray et al.* vs. *Ballou et al.* shows, that the law annexes this trust to the estate, and that he cannot divest himself of it but by accounting for the trust money, or the land to the *cestuy que trust.* The consideration paid by defendant to Curtis for his deed does not alter the case, though it had been to the full value of the estate. The trust is still annexed to the estate. And, by the case of *Shepherd* vs. *McEvers et al.* it appears, that the interest of *cestuy que trust* cannot be impaired by the trustee by any act of his. The most slight request, by defendant or those under whom he claims, made to the plaintiff, to pay the money for the redemption of Simeon Hathaway's mortgage, before payment, or the slightest promise, or recognition of it, after payment, would have enabled plaintiff to have sustained a suit at law for its recovery. And, if so, the reasonableness of the plaintiff's claim is such, that equity may well regard the acceptance of the deed from Curtis, whose title was a mere trust, and setting up a claim under it, as such a recognition of plaintiff's title, as to compel defendant to refund the money, or surrender the estate.

Should it be said there was no privity between the plaintiff and defendant, it is answered, 1st, that privity of contract is not necessary to authorize the interposition of a court of equity, where justice requires it. In most cases of fraud, which is the principal ground of equity jurisdiction, there is usually no privity. But the court will relieve on the general ground of equality of *burthen* and *benefit.* In decreeing against the *Earl of Winchelsea,* (1 *Cox Rep.* 318,) it is said, " the doctrine of contribution amongst sure- " ties is not founded on contract, but is the result of general equi- " ty, on the ground of equality of *burthen* and *benefit.*" The same doctrine is recognized in *Campbell* vs. *Mesier,* (4 *J. C. R.* 337,)

to which we shall again refer, as reported in 6 *Johns. C. R.* See, also, 2 *Cox Rep.* 86.

FRANKLIN,
January,
1831.

Payne
*vs.*
Hathaway.

2. If, by privity, privity of estate is intended, there was such privity in the present case. Each party was claiming the estate from one common source: the premises had been incumbered by the person under whom both claimed; and the removal of the incumbrance must enure solely to the benefit of the party, in whom the legal title should ultimately be found. In such case either party might redeem; and he, for whose benefit the payment should finally operate, ought, in equity, to release the title or refund the money.

3. The payment of the redemption money, by either party, creates an equitable lien on the land; and though the party paying cannot compel the repayment of the money, yet, it being a lien on the land, he, who holds the land, may be decreed to refund, or reconvey the estate. In a sale and conveyance of land, the purchase money, if not paid down, is in equity a lien on the land; and a contract for the sale of land in equity vests the title in the vendee, so that he may assign or devise it; or it will descend to the heir. And, in such case, the heir or assignee cannot be compelled to pay the money; yet equity will decree, that he shall release the claim, or that the land shall be sold for the benefit of the vendor.—See the cases of *Champion et al.* vs. *Brown et al.* 6 *Johns. C. R.* 398. See also the case of *Campbell* vs. *Mesier* and *Dustan*, (6 *J. C. R.* 20.)

On the ground, then, that this money was paid for the benefit of the estate, and on the ground, that it has enured to the benefit of defendant, in whom the title now rests, he, or in other words the estate, should bear the burthen, as forming an equality of *burthen* and *benefit*, and should be a lien on the estate. In the last case cited, it was objected, that there was no privity between the parties; but there was privity of estate, and that was sufficient. It is manifest, that *Shadrach Hathaway*, by his purchase from Silas, placed himself in his shoes, and became alike liable to this equitable lien on the estate.

How, then, would the case have stood with Silas, had he continued to own and enjoy the estate to this time? The plaintiff, or those under whom he claims, had a large legal and equitable demand against him: judgment is obtained, and execution levied on the land. The land is incumbered with a mortgage which he ought to discharge. The redemption is about to expire. The judgement creditor, to save his levy, redeems it within three

FRANKLIN,
January
1831.

Payne
vs.
Hathaway,

months after the levy. At the end of six months, Silas redeems from the levy, under the statute, by paying the appraised value and interest; or the levy, through some defect in the proceedings, or through want of title in the judgement debtor, becomes unavailing to the creditor, who then takes an alias execution and obtains a satisfaction from other property.—Silas Hathaway continues to possess and enjoy the estate disincumbered-from the mortgage. Is it possible that equity should not relieve?

But there was privity of contract between plaintiff and John Curtis; and this privity has descended to defendant by his purchase of Curtis on the 7th of April, 1815. Curtis' estate was a trust estate. The trust was, that he should sell these lands, and secure the debt, which plaintiff now seeks to recover, on the lands at the time of such sale. The defendant purchases this title subject to the trust, and thus impliedly undertakes to execute it; and this creates a privity of contract; and if not, yet most assuredly, inasmuch as he holds under this title, and has set up a defence under it at law, it must amount to a privity of estate; and defendant thereby becomes obnoxious, in equity, to surrender the estate or refund the money.

But, it may be said, that this was a voluntary payment by plaintiff or those under whom he claims. A voluntary payment is one made under circumstances, from which the Court will presume it was intended as a gift to the party, for whose benefit it operates; or, at least, a payment made from mere officiousness, and without any motive of interest or duty; and without any interest to be protected thereby. A payment of an incumbrance by a subsequent purchaser is not a voluntary payment. Suppose then his title happens to fail, after paying off the incumbrance, either through some defect in his deed, or want of title in the grantor, does it then become a voluntary payment? A payment is in some measure voluntary, or not, according to the motive with which it is made. If the party supposes he is discharging a duty, or securing an interest, in making it, the payment cannot be said to be voluntary. The plaintiff had an equitable interest in the estate, as between himself and the judgement debtor, by virtue of the indebtedness of Silas Hathaway, the attachment, judgement, and levy; and, if so, he had an equitable right to pay off the incumbrance. The payment cannot, therefore, be voluntary, but creates an equitable lien on the estate.

II. Is the plaintiff's claim barred by the statute of limitations? In examining the cases in chancery, in relation to applying the

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

statutes of limitation to suits in equity, it will be found, that courts of equity do not hold, that suits in chancery are at all within those statutes; or that courts of equity are at all bound by them as statutes. But, by a long course of decisions, the courts have adopted them, in certain cases, as covenient and equitable rules of decision, and as sound rules of policy in proceedings in those courts.—*Kane* vs. *Bloodgood,* 7 *J. C. R.* 113 ; *do.* 119. And these rules have been so long adopted and applied, that courts of equity now consider them as forming a kind of equity common law. The question then is, in what cases have courts of equity adopted the statutes of limitation, and in what have they overruled them as inapplicable ?

The rule is, " That statutes of limitation are applied in equity " in those cases, and in those only, where there is a concurrent " remedy at common law, which would be barred by the statute of " limitation."—*S. C.* 113, 114, 120. These statutes, from their nature, and in their terms, operate only on the remedy. Inasmuch, then, as they only affect remedies at law, and equity proceedings are within neither the letter nor spirit of those statutes, the courts of equity would, or could with propriety, adopt them only in those cases coming within the above rule. In those cases they are adopted *ab convenienti,* and on principles of policy. It would be useless to hold, that the remedy was barred in one court, and not in another, under the same general jurisdiction, and deriving their authority from the same source. If the remedy for a particular injury is barred in one court, it ought to be barred in all courts, having concurrent jurisdiction. Otherwise, the courts of equity and of common law would be at variance. But, as the statutes operate on legal remedies only, to extend them to cases, where there is no legal remedy, would be to legislate ; which courts of law and equity are alike incapable of doing. In applying this rule, it will be found, that there are two classes, of trusts to which the statute of limitations has never been applied by courts of equity. The *first* is those trusts which are *mere creatures of the courts of equity.* The *second* is *subsisting trusts,* as between trustee and *cestuy que trusts.* As to the first class it may be observed, that, by *trusts, which are mere creatures of the courts of equity,*is intended such trusts as arise from the more equitable consideration of the facts in the case, and such as can be recognized and enforced only by a court of equity, and, that such are not affected by the statutes of limitation, is clear from the authorities. *Norton* vs. *Turvill,* 2 *P. Wms.* 144 ; *Kane* vs. *Bloodgood,* 7 *Johns.*

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

C. R., 90, 111, 113, 114, 118 ; *Decoustre* vs. *Savitier*, 3 J. C. R. 216, 217 ; 7 J. C. R., 126.

It will hardly be contended, after the arguments we have just heard on the equity of the plaintiff's case, that we have a remedy at law, even independently of the statute of limitations ; especially after the severe ordeal we have passed in submitting our title to investigation in ejectments at law. Our title at law to the lands has been investigated in the Supreme Court ; and, tho' not found to be legal, yet, in that investigation, the equity of the plaintiff's claim was apparent to every one. Had we ever then any remedy at law to recover back the money paid for the redemption ? Should this be answered affirmatively, we would be thankful to have this remedy pointed out to us. The money was paid without request of defendant ; and it is not known, or pretended, that he has ever made any promise or acknowledgement, which would subject him to an action for its recovery. The statute, therefore, does not apply. And the question returns, and it is the only question in the case, have we an equitable claim to have the money refunded, or the land released to us ?

The other class of cases is *subsisting* trusts as between the trustee and the *cestuy que trust.* The reason why the statute does not apply in these cases is the same as in suits at law between landlord and tenant, viz., " that the possession of the trustee is the possession of the *cestuy que trust.*" It is not adverse, but is consistent with the right and interest of the *cestuy que trust.* It must, therefore, be a *subsisting* trust. When, therefore, the trust ceases to subsist, the statute will commence running. The trust does cease to subsist, whenever the possession of the trustee becomes adverse to the possession of the *cestuy que trust.* So also the statute will run in favor of the possession, which is adverse to the rights both of the *trustee* and *cestuy que trust.* But, in these cases, different statutes will apply according to the different remedies sought in a court of equity. And still it will be true, that, if the trust or equity of the case be such, as is properly called a mere creature of a court of equity, no statute of limitations will apply. If the remedy sought by the bill be a decree for the payment of money, and if it be a case in which the plaintiff had a corresponding remedy at law, as in the case of *Kane* vs. *Bloodgood*, and that remedy at law be barred by the statute of limitations, the the statute of limitations of six years will apply. If the remedy sought relates to the title, and so be analogous to our ejectment at law, and there be a corresponding remedy at law, against which

the statute has run, then the statute of limitations of twenty years, (or in this state fifteen years,) will be applied in a court of equity.

If the plaintiff seeks relief on the ground of the general equity of the case, or, if the *equity of the case or trust* be a mere creature of a court of equity, of which a court of law can take no cognizance, and for which it can afford no remedy, but the ground of relief is cognizable solely in equity, for the reasons already assigned, and according to the authorities cited, no statute of limitations whatever can be applied.

As the object and scope of the present bill is, *first*, to obtain relief on the ground of the general equity of the case, the money having been paid by the orator, and enuring wholly to the benefit of defendant, and on grounds which are in no sense cognizable by a court at law, but solely within the jurisdiction of a court of equity, or, in other words, the trust is a mere creature of a court of equity, it comes, therefore, within no statute of limitations. And *secondly*, the other ground of relief is that the acceptance of the title under Curtis' *trust* deed makes *Shadrach Hathaway* a trustee in relation to this land, and, that the mortgage money paid by plaintiff is a lien on the land. The relief sought is a reconveyance, which is analagous to an ejectment for the land ; and, if it comes under any statute of limitations, it is the fifteen years, and not the six years, limitation. The relief asked, it is true, is in the alternative, viz. to reconvey or refund the money; but this is done because, if the land is of more value than the money, it will be favorable to the defendant to take that alternative. It may be asserted with confidence, that, if we are entitled to relief on any ground, the plea of the statute of limitations cannot prevail; and the fifteen years limitation has not yet run since the conveyance by Curtis to defendant.

*Mr. Brown, for the defendant, in reply.*—If money be voluntarily paid by a person, with full knowledge of all the circumstances, or with full means of obtaining such knowledge, he cannot recover it back. Nor is ignorance of the law a good ground to recover back money so paid.—1 *Esp. N. P.* 5 ; 2 *Com. on Con.* 40, 41 ; 4 *Johns. Rep.* 240 ; *Knibbs* vs. *Hall,* 1 *Esp. Rep.* 84 ; *Beach* vs. *Vandenburgh,* 10 *Johns.* 361 ; *Overseers of Walkill* vs. *Overseers of Mamakating,* 14 *Johns. Rep.* 87 ; *Bilbie* vs. *Lumley,* 2 *East Rep.* 468 ; *Stevens* vs. *Lynch,* 12 *East Rep.* 38 ; *Gates et al.* vs. *Winslow,* 1 *Mass.* 65. Nor can one, who pays money for the benefit of another, if without request express-

FRANKLIN,
January,
1831

Payne
vs.
Hathaway.

ed or implied, recover it from the party, for whose benefit it is paid. It is a rule of law, that one cannot make another a debtor against his consent.—2 *Com. on Con.* 151 ; *Exall* vs. *Partridge,* 8 *Term Rep.* 308, (*the opinion of judges* KENYON *and* LAW-RENCE.) The rule is the same in equity. That court will not interfere in favor of volunteers.—1 *Ves. Jun.* 275 ; (*Ham. Dig.* 214.)

The payment of the mortgage by Hitchcock & Allis to Simeon Hathaway was voluntary. They had no title to the land, and therefore had no interest to be affected by the mortgage. The right to redeem was in Silas Hathaway, notwithstanding the levy ; and had Hitchcock & Allis applied to a court of chancery to redeem, the court would not have decreed in their favor.—*Grant et al.* vs. *Doane et al.* 9 *Johns. Rep.* 591 ; 1 *Powell on Mortgages,* 381, 348–9.

If it should be contended, that payment of the money by Hitchcock & Allis relieved the estate of Silas Hathaway from an incumbrance, and thereby created an equitable claim on him for the money so paid ; it is answered that Hathaway might not have considered the mortgage as an incumbrance. He might have had the means of defeating the foreclosure. He might have had a contract with Simeon Hathaway, which would have made the foreclosure a matter of interest to him. The equity in this case is no stronger than any other case of voluntary payment.

If it should be considered, that Silas Hathaway was liable to Hitchcock & Allis for the money paid, then, it is contended, it was only a personal claim on Hathaway, and was not a lien upon the land ; because, there was no assignment of the mortgage to them. Had the mortgage been assigned, the decree would have had its full effect, and the estate would have been vested in Hitchcock & Allis ; the equity of redemption would have been foreclosed, and they would have had a complete remedy at law. The mortgagee's interest in the land could not be transferred without a memorandum in writing agreeably to the statute.

This case does not compare with the case of a subsequent mortgagee's paying off a prior mortgage ; because, in that case, the subsequent mortgagee has an interest in the land, which would be defeated if the first mortgage was not paid ;—and, as to the mortgagor, he has a good title to the land, to which equity will attach the money paid on the prior mortgage, and on which the court can found a decree.

There has been no transfer to the orator of the debt in favor

FRANKLIN,
*January*
1831.

Payne
*vs.*
Hathaway,

of Hitchcock and Allis against Hathaway. That debt was not a lien on the land ; it, therefore, could not have passed, by virtue of the mortgage of Hitchcock and Allis, to the orator. The bill sets forth no transfer nor any agreement on the part of Hitchcock and Allis to transfer their claim upon Hathaway to the orator. If Hitchcock and Allis have not, therefore, by virtue of the payment to Simeon Hathaway, obtained the interest of mortgagee, the claim against Silas Hathaway remains in their representatives, and has not passed to the orator.

The bill charges, that the orator loaned the money to Hitchcock and Allis, with which the mortgage to Simeon Hathaway was paid ; and though this might be a ground to decree, against Hitchcock and Allis, the assignment of their debt against Hathaway to the orator, yet this cannot be done here, inasmuch as they are not parties to the bill ; and the loaning of the money with which the mortgage was paid cannot be taken as an assignment of the debt. An assignment in law could not be made without an actual assignment of the debt. The money was not paid to Simeon Hathaway for the purpose of purchasing the debt, but with the express view of extinguishing it.

The orator distinctly alleges in his bill, that the money was paid in satisfaction and discharge of the mortgage, and that the defendant now holds said lands discharged from said mortgage and equity of redemption. The Court, therefore, cannot presume there was an assignment, as the contrary is expressly alleged in the bill. If the orator intended to contend, that there was a purchase of the mortgage debt, he should have alleged it in the bill.

If Hitchcock and Allis had no title to the land, they could not, without an assignment of the mortgage, acquire a lien on the land by merely paying the debt and discharging the incumbrance.

It does not appear from the bill that the deed from Hitchcock and Allis to the orator was any thing else than a quit-claim deed, without covenants, and could not pass any thing but their interest in the land.

The date of the note and mortgage from Hitchcock and Allis to the orator is prior to the payment of the money on the mortgage to Simeon Hathaway. At the time Hitchcock and Allis ex·ecuted their deed to the orator, there was no obligation created on the part of Silas Hathaway—no debt existed against him ; and an obligation, that had no existence at the time of the mortgage to the orator, could not have passed by it.

The payment of the mortgage by Hitchcock and Allis to Sime-

DD

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

on Hathaway not being a lien upon the land, there is no privity of estate between the orator and defendant, whereby he can be made liable for the money : and no privity of contract appears in the bill.

The orator loaned the money and took the security from Hitchcock and Allis as trustee for a great number of persons. Could defendant be made liable to all these persons, and be compelled to litigate the questions arising in the case with half the state interested against him ?

The contract of Silas Hathaway with Hitchcock and Allis, as set forth in the bill, upon which the judgment against Silas Hathaway was recovered, was fraudulent and void ;—and though Hitchcock and Allis might enforce their judgment at law, yet, when they come into equity, they must show an equitable claim.

Should it be considered, that Hitchcock and Allis did take the interest of Simeon Hathaway, and were in equity assignees of the mortgage,—then it is contended, that the presumption of law is, that the mortgage has been cancelled ; it being more than twenty years since the payment of the money by Hitchcock and Allis. Had the mortgage remained in Simeon Hathaway, the presumption would have been clearly against him ; and Hitchcock and Allis cannot be in a better situation. The suits at law did not do away the presumption,—they being brought upon the title pretended to have been acquired by the levy. The mortgage to Simeon Hathaway was never set up as a claim in those suits ; nor could it have been, as the facts contained in the bill furnish no ground to presume a legal title. So strong is the presumption raised by a lapse of twenty years, that even where the circumstances of the case lead the mind to believe the money has not been paid, this will not rebut the presumption.

The bill shows that the orator had only an estate in trust ; and this estate was conveyed to John Curtis, and the deed is not void. Under the statute, the whole interest of the orator has passed to said Curtis.

HUTCHINSON, Chancellor, pronounced the decree of the Court. —It appears in this case, that Messrs. Hitchcock and Allis had a large claim, of some sort, against Silas Hathaway, upon which they commenced their suit at law, and attached the lands of Silas Hathaway in Swanton, by virtue of their original writ ; that these lands were encumbered by a mortgage from Silas Hathaway to one Simeon Hathaway, to secure him from his undertaking for said Silas to one Robinson for about the sum of two thousand dol-

FRANKLIN,
*January,*
1831.

Payne
*vs.*
Hathaway.

lars; that Hitchcock and Allis recovered a final judgement against Silas Hathaway in that suit, for a sum exceeding thirty thousand dollars; that they took out their execution, and levied it upon the lands thus attached, subject to this mortgage which yet remained unsatisfied; that Simeon Hathaway obtained a decree of foreclosure of the equity of redemption of his mortgage; that Silas Hathaway wholly neglected to pay the redemption money, and the same was paid by Hitchcock and Allis on the last day allowed by the decree for such payment; that Silas Hathaway also neglected to redeem these lands from the levy of said execution, which levy was to the amount, as appraised, of about twenty six thousand dollars. It further appears, that the present orator and sundry other persons, for whom he now claims, furnished to Hitchcock and Allis the money, with which they redeemed the lands in question from Simeon Hathaway's mortgage; and, by the mutual understanding of those, who furnished this money, and said Hitchcock and Allis, the latter gave their note to the orator for the amount of the money, and also gave him a mortgage of the same lands to secure the payment of this note. This made the orator trustee to his associates for their portions of the property. This presents to view whatever title the orator has to the lands in question, and all his equitable claim upon them, or any person holding them, for this money, and interest for the same. This would clearly be a good title as against Hitchcock and Allis. But neither they nor their representatives oppose any claim to the orator. The complaint in the bill is, that the present defendant has interfered, in an improper manner, to prejudice the orator; that he has obtained the title of said Silas Hathaway in these lands, in the ways described in the bill, and has put tenants upon the same, and has defeated the orator in sundry actions of ejectment, brought by him for these lands. And there is no dispute, but that the title of the present defendant is good as against Silas Hathaway. But the orator complains that, as to him, and those in whose behalf he now contends, this title of the defendant is fraudulent and void. And the orator seeks relief as against this defendant, either by repayment of the money advanced to redeem the lands, or by a surrender of the lands themselves.

On a demurrer to this bill for want of equity, and for want of proper parties, several difficulties are urged in argument, that must be noticed with more or less ceremony.

It is said if the orator has any claim, it is good at law. The bill answers this by anticipation, alleging that he has no remedy

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

at law ; that he has brought his ejectments and failed to recover, because the levy of the execution of Hitchcock and Allis was adjudged defective. There is no pretence of any privity of contract between these parties, by which the orator could recover the money thus paid in any action at law. The arguments of the defendant's counsel are sufficiently conclusive, that the orator has no remedy at law. He has no title to the lands, but under the defective levy. He has no pretence of claim to the title of Simeon Hathaway. That title was not assigned to any person ; but was rendered wholly void by the payment of the redemption money. The defendant's counsel urge that the orator had no such title, that a court of chancery would have let him in to redeem Simeon's mortgage ; hence also they infer that he has no equity of any sort which a court of chancery will notice.

That a man, who has no title, cannot be let in to redeem, is a correct position. A mortgagee runs his chance, to get his money and interest, or, instead of it, the mortgaged premises. These may be worth much more than the money secured by the mortgage. No person has a right to deprive the mortgagee of his rights, and of his chance of getting the mortgaged premises in lieu of his debt, except the mortgagor, and such as have his title, and claim under him. Yet the inference, drawn from this position, is not sure to follow. There might still be so strong an equity that some relief should be obtained from some quarter, even though there was no right to redeem against the will of the mortgagee.

The great question in this case is, whether the orator has set up in his bill such grounds of equity, that the same ought to be enforced against the defendant. If Hitchcock and Allis would have had any equity, that is clearly transferred to the orator, so far as relates to the money raised to redeem Simeon Hathaway's mortgage. The levy of Hitchcock and Allis being made subject to this mortgage, they could not hold the land without first paying off this mortgage ; and, as they could not raise the money for this purpose, except by a loan, and the orator making that loan on a mortgage security of these lands, and, undoubtedly, supposing the title by levy good, the orator has as strong an equity as they could have had, if they had advanced their own money, which they before possessed.

We will first examine how this equity would stand, as against Silas Hathaway, if he had never conveyed his title to the defendant, and had succeeded in defeating the levy of Hitchcock and Allis

FRANKLIN,
January,
1831.

Payne
vs.
Hathaway.

for the defects, that have availed the present defendant. The case would then stand thus. Silas Hathaway owed the money upon Simeon Hathaway's mortgage; and he alone ought to have paid it. He also owed the large debt to Hitchcock and Allis; and that, having passed into a final judgement of a court of competent jurisdiction, must now be treated as a fair debt, which Silas Hathaway, and he alone, ought to pay. While Silas Hathaway neglected to pay these debts, or either of them, Hitchcock and Allis could not satisfy their execution without levying upon these incumbered lands, the very levying upon which, was virtually assuming the payment of the debt to Simeon Hathaway. They levied their execution, and paid this debt accordingly. Now, if Silas Hathaway had submitted to the title of Hitchcock and Allis, and let them hold these lands, in part payment of their debt, all would have appeared correct; for the lands being apparised as subject to the mortgage of Simeon Hathaway, Hitchcock and Allis ought to pay this debt. They had received pay in land for so doing, and may well be considered as paying it for themselves, and not for Silas Hathaway. As soon, however, as Silas Hathaway wages war with the levy of this execution and defeats it, and holds the land levied upon, free from all incumbrance, the scene is changed : the debt of Hitchcock and Allis ceases to be paid by the levy, and may be revived by *scire facias;* but the payment of Simeon Hathaway's mortgage ceases to be for the benefit of Hitchcock and Allis as it stood before. It now becomes a payment for the benefit of Silas Hathaway. Now, if there is any reason or justice in the law, which authorizes the recovering back money, which is paid by mistake, or in chancery proceedings to remunerate for losses by mere mistake, the same reason and justice concur, in requiring Silas Hathaway to refund this money, thus paid for his benefit, with interest for the same.

Two objections, however, are urged, to a remedy in this case, which must not be passed without notice : 1st. that this was a voluntary payment; and 2d. that Hitchcock, and Allis should be joined as orators. With regard to the first, we discover, in this, nothing of the character of a voluntary payment, in the legal sense of that term. Hitchcock and Allis were endeavouring to secure and collect a large debt. They levied their execution upon the only property they could find, to the amount of about twenty six thousand dollars, which was considerably less than their whole debt; and of this they could derive no benefit, without first paying Silas Hathaway's debt to Simeon Hathaway. This they paid.

FRANKLIN,
January,
1831

Payne
vs.
Hathaway.

They could hardly be said to have any choice about it. They must either pay it, or relinquish all hope of saving their large debt.

With regard to the necessity of joining *Hitchcock* and Allis with the orator, the complaint discloses no fact which *shows* such necessity. While the object of the complaint is, to obtain the money which the orator advanced for himself and others to *Hitchcock* and Allis, to be paid away for the debt of said Silas *Hathaway*, the decree, if any, should be in favor of the orator alone. We do not discover the propriety of any decree in favor of *Hitchcock* and Allis concerning this money, sought by the bill, when all equitable right to it is shown to be in the orator alone, for himself and others who advanced the money, to the entire exclusion of *Hitchcock* and Allis. They have no right to receive this money, nor do any act to prevent its going to the present orator. It is for the benefit of *Hitchcock* and Allis, that the orator should succeed, and collect this money, because, when he collects it, that operates to discharge the note and mortgage they gave the orator. But this interest is indirect and one for which they cannot prosecute. All their title to these lands passed to the orator by their mortgage deed, except their right of redeeming. That right cannot be affected by any decree, that can be made in this suit. If there remains a possibility of some future litigation between the orator and *Hitchcock* and Allis, that can never affect the present defendant, nor Silas *Hathaway*. They would be perfectly safe in paying this money, or surrendering these lands, to the present orator.

The allegations in the bill of complaint exhibit sufficient equity in favor of the orator, suing as he has done, and against Silas *Hathaway*. We will now proceed to examine the case as between the orator and *Shadrach Hathaway*, the present defendant.

Here again, an objection is raised to the form of the proceedings, because Silas *Hathaway* is not made a party defendant. If the Court should ever make a decree to affect the title of the lands, Silas need not be joined on this account; for all his remaining title long since passed to the defendant, *Shadrach Hathaway*. Two deeds were given, one on the 12th of September, 1805, and the other November 21st, 1810. If the decree should be for the payment of the money, according to the allegations of the bill, *Shadrach Hathaway*, and not, Silas, ought, as between them, to pay this money; because, it is charged in the bill, that the defendant fraudulently took said deeds from said Silas, and has always since had the benefit of the possession and rents and

profits of said lands : so that from that time, the defendant has
stood in the place of Silas ; and the paying off the mortgage to
Simeon *H*athaway has, since the defendant obtained the title and
possession of the lands, operated for the benefit of the defendant
solely. *H*e, then has no claim that Silas be made a party ; and
the orator asks for no decree against him.    This objection is over-
ruled.

The defendant's counsel, in arguing this demurrer, have urged
a presumptive bar from lapse of time &c. apparent upon the bill.
This is not the usual mode of presenting such a defence.    The
case cited, by defendant's counsel, from *Brown's Chancery Re-
ports, page* 639, fails to show this admissible, in this way.    It
does not there appear, from the note of the case of *Smith* vs.
*Clay*, how the question was raised.    But, in the principal case
of *Doleraine* vs. *Brown*, it is expressly decided, that such a ques-
tion does not arise upon a demurrer to a bill.    Where the defendant
pleads a presumptive bar, it may be met with counter presump-
tions, or with rebutting testimony ; and it would be too incon-
venient to require the Orator, not only to set forth his own grounds
of complaint, but also to insert such precautionary facts as he
might, or might not, find necessary to avoid the defence, should
such a defence be made.    This objection cannot prevail.    Nor
could it prevail, upon the facts that appear, were it urged in a
proper way.    The orator has not slept upon his claim, as is urged ;
for he had no claim in this Court, while his remedy at law had not
been decided against him ; at least, had he applied to this Court
in the first instance, he must have alleged his want of remedy at
law, which would have been a warfare upon the legality of his
title under the levy.    He had a right to hope, that his title would
be considered valid, and, while the statute had not run upon that,
no presumptive bar arises against a claim, which virtually derives
its original from a decision against that title.

The Court overrule the demurrer ; and proceed to consider
the plea of the statute of limitations, interposed by the defendant.

This plea stands alone, unaccompanied with any answer.    Now
it is charged in the bill, that the defendant when he took his deeds
from Silas Hathaway, took them in fraud of the creditors of Silas,
and gave back a writing to said Silas, showing the title under the
first deed to be in the defendant in trust for Silas ; and that this
was kept a secret between them nearly five years, when this
writing was recorded, and the second deed given to the defen-
dant.    It is also alleged in the bill, that, while one John Curtis

FRANKLIN, held the orator's title in these lands in trust to sell and take secu-
January, rity on the lands for the consideration money, for the benefit of
1831.
orator, and those for whom he acted, the defendant, knowing of
Payne this trust, obtained the title of Curtis and still holds the same, and
vs
Hathaway. used it in his defence in the ejectment suits. The defendant
should have answered these allegations, either denying them
wholly, or explaining them to be of some different character from
that charged in the bill. Without such answer the plea does not
bar the equity set up by the orator ; for the statute does not run
against an equity, when the grounds of that equity have been kept
out of sight by the fraud of the defendant, who pleads the stat-
ute ; nor does it run against a subsisting trust. If the deed
from the orator to Curtis was a trust deed, and the defendant took
his deed from Curtis in 1815, knowing this trust, and knowing the
orator's continued claim, and still holds that title, he holds in trust
for the orator, as fully as Curtis did before he conveyed to the
defendant. This is a subsisting trust, against which the statute
does not run.

I have omitted to notice, in its proper place, the suggestion of
defendant's counsel, that the defendant cannot be compelled to
answer the interrogatories in reference to his deeds being fraudulent.
This is not embraced in the demmurrer. That only reaches the
supposed want of equity and want of necessary parties. There
is no demurrer to the part of the bill, which claims a discovery.
This point, therefore, is not regularly raised. If the defendant
omits to answer this part of the bill, exceptions to his answer for
this defect will raise the question ; and it must then be de-
cided accordingly as his answer might, or might not subject him
to statute penalties.

The plea in bar is also overruled ; and the defendant must
answer to the bill of complaint.

The orator then moved to amend his bill, which was granted
on terms, and defendant had leave to plead or demur to the amen-
ded bill by March 1st, or answer by April 1st.

The orator's counsel also suggested to the Court, that the per-
son heretofore appointed receiver of the rents of these lands, to
act during the pendency of this suit, refused to act in that capacity,
and, without praying for process of contempt against him, asked,
that another receiver might be appointed ; which was done accor-
dingly.

C. *Marsh & B. F. Bailey*, for orator.
C. *Adams, S. S. Brown & Aldis*, for respondent.