## CASE v. FANT et al.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1892.)

No. 131.

1. MORTGAGES—SUBSEQUENT CONVEYANCE—MERGER.

A mortgagee assigned the mortgage and note as collateral, and thereafter received the fee by a conveyance wherein the mortgage was expressly excepted from the warranty against incumbrances. He thereafter executed a second mortgage as security for a debt past due, giving notice of the prior mortgage to the second mortgagee. *Held*, that there was no intention to merge the prior mortgage in the fee, nor could such merger take place even if the parties had so intended.

2. SAME.

Where a note secured by a pledge of a note and mortgage, and not paid at maturity, is renewed, and the renewal note recites that the note and mortgage are pledged to secure its payment, the pledge has relation to, and will be given effect as of, the date when it was first made, if the interest of the pledgee requires it.

3. PAYMENT—APPLICATION AT CREDITOR'S ELECTION.

A man holding two notes by one maker, one of them secured by mortgage, who receives further security, with an express agreement that he may apply it to either note at his election, may make such application to the unsecured note, and a second mortgagee can make no valid objection thereto.

Appeal from the Circuit Court of the United States for the District of Nebraska. Reversed.

Statement by CALDWELL, Circuit Judge:

On the 18th day of October, 1890, John R. Case, the appellant, filed his bill in the district court of Buffalo county, Neb., against Dillard R. Fant, William A. Fash, Melvina C. Fash, Ethan H. Cowles, Bessie Cowles, Stanley Thompson, and the Buffalo County National Bank, to foreclose a mortgage on certain real estate. The mortgage was made on the 11th of September, 1884, by the defendants Fash and wife to the defendant Ethan H. Cowles, to secure the payment of a promissory note, of even date with the mortgage, made by Fash, and payable to the order of Cowles, due September 11, 1889, for the sum of $18,000, drawing 8 per cent. interest per annum, for which annual interest coupons were attached, running until the maturity of the note, the principal sum drawing 8 per cent. interest after maturity until paid. Case acquired the note and mortgage in the following manner: On the 7th of February, 1885, Case loaned the defendant Cowles $9,000, and to secure the payment of the same Cowles indorsed and assigned to Case the Fash note and mortgage. On the 12th day of December, 1885, Case loaned Cowles $18,000, for which sum Cowles executed his note, payable one year after date. Out of the money received on this last loan Cowles paid the $9,000 previously borrowed, and the Fash note and mortgage, which had been pledged to secure the payment of the $9,000 loan, were now pledged to secure the payment of the $18,000 loan. The $18,000 note was not paid at maturity, and its payment was extended one year by a change of its date, but it was not paid at the expiration of the year, and on the 19th of October, 1888, it was renewed by Cowles giving a note payable 12th of December, 1889. The old note was not canceled or surrendered, and the Fash note and mortgage continued to be held by the appellant as security for the payment of the $18,000 loan. On the 19th of October, 1888, Case lent Cowles the further sum of $10,000, which was secured by a pledge of collaterals. The $10,000 note was not paid, and on the 16th of November, 1889, was renewed, there being included in the renewal note the overdue interest on the $18,000 note to that date, making the sum of the note $14,183.50. On the 10th day of June, 1890, Cowles and wife executed a certain instrument assigning to Case certain property as further security for the payment of the notes for $18,000 and $14,183.50, respectively. Case was authorized by the terms of this instrument to apply the proceeds of the securities therein mentioned to either of the notes, "as he shall elect," and the instrument was not to affect or impair the securities which he already held. The property mentioned in this instrument was sold, and the proceeds applied in part payment of the note for $14,183.50, except the sum of $1,307.50, which was credited on the note for $18,000. On April 4, 1888, Fash and wife conveyed by deed to Cowles the land covered by the mortgage from Fash and wife to Cowles, and which mortgage had been transferred by the latter to Case in the manner and for the purpose before stated. This deed warranted against incumbrances, "except a mortgage of $18,000, which grantee hereby agrees to assume as part of purchase price." On February 1, 1884, the defendant Cowles executed his promissory note to the defendant D. R. Fant for the sum of $6,488, and on the 6th day of March, 1889, to secure the payment of said note, less $1,000 which had been paid thereon, Cowles and wife executed a mortgage on the lands embraced in the mortgage from Fash and wife to Cowles, and which lands Fash and wife had conveyed by deed to Cowles, as before stated. At the time this mortgage was given, Fant executed the following instrument:

"Mr. E. H. Cowles having this day given a mortgage to D. R. Fant on land in Buffalo county to secure a note of $6,488, dated 2-1-84, due July 1, '84, on which was paid $1,000 May 22, '86, this is to certify that said Cowles represents and claims that there is now existing on said lands a mortgage for $18,000; but said Fant does not acknowledge the existence of said mortgage for want of full information."

Fant appeared to the suit in the state court, and removed the case into the circuit court on the ground of diverse citizenship, and there filed an answer and cross bill. By his cross bill he seeks the foreclosure of the mortgage made to him by Cowles, and to have the lien of this mortgage decreed to be prior and superior to the mortgage from Fash to Cowles, and which the complainant is seeking to foreclose by the original bill. The grounds upon which Fant claims that his mortgage should be decreed to be the first lien on the mortgaged premises are (1) that the conveyance of the mortgaged premises by Fash to Cowles merged the legal title to the lands in Cowles, and thereby extinguished the Cowles mortgage, which had been previously assigned to the complainant Case; (2) that the renewal on the 19th of October, 1889, of the Cowles note to Case for the $18,000 was the

creation of a new debt, or was a new loan, and, if the Fash note and mortgage was pledged to secure the renewal note, the pledge must have relation to the date of that note, and be operative only from that date, and that as Fash had six months before that time conveyed the mortgaged premises to Cowles, that conveyance worked a release of the mortgage, and Cowles had no mortgage to assign Case, as collateral security or otherwise; (3) that the proceeds of the sale of the securities mentioned in the assignment from Cowles to Case, dated June 10, 1890, should be applied on the $18,000 note. The lower court decreed that the mortgage from Cowles to Fant was the first lien on the property, and gave it priority over the mortgage from Fash to Cowles, which had been assigned to Case. From this decree the complainant, Case, appealed to this court.

Henry S. Osborne, (Osborne Bros. & Burgett, on the brief,) for appellant.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge. (after stating the facts.) 1. The conveyance by Fash to Cowles of the mortgaged premises did not operate as a merger or extinguishment of the mortgage for several reasons. The general rule is that a mortgage will not be merged or extinguished by a subsequent conveyance from the mortgagor to the mortgagee of the mortgaged premises unless such appears to have been the intention of the parties, and justice requires it. 1 Jones, Mortg. § 870; James v. Morey, 2 Cow. 246, 285; White v. Hampton, 13 Iowa, 259; Purdy v. Huntington, 42 N. Y. 334; Miller v. Finn, 1 Neb. 254. In this case the deed from Fash to Cowles was made subject to the mortgage for $18,000, and when Fant took his mortgage he signed a writing distinctly admitting that he had notice that there was then "existing on said land a mortgage for $18,000.' The statement in the deed that the premises are subject to the mortgage shows that it was the intention of the parties to the deed not to extinguish the mortgage. 1 Jones, Mortg. § 870; Insurance Co. v. Corn, 89 Ill. 170; Bank v. Essex, 84 Ind. 144. Fant had notice in fact that it was not extinguished at the time he took his mortgage to secure an indebtedness which accrued years before. It is clear, therefore, that he was not misled or prejudiced in any manner, and has no equity to claim that the mortgage should be extinguished for his benefit. The note which the mortgage from Fash to Cowles was given to secure was negotiable, and was indorsed and transferred with the mortgage, for a valuable consideration moving at the time, before its maturity, and before the execution of the deed from Fash to Cowles for the equity of redemption. The mortgage debt had not matured at the date of this deed. Upon these facts it was not competent for Fash and Cowles to extinguish the mortgage if they had desired and intended to do so. The rule is well settled that, where the mortgagee has transferred his mortgage as collateral security for the payment of a debt before his purchase of the equity of redemption, no merger takes place, for the reason that the different estates in such case do not vest in the same person. Kellogg v. Ames, 41 N. Y. 259; 1 Jones, Mortg. § 870. It would operate as a fraud upon the pledgee of the mortgage to hold that a subsequent conveyance of the equity of redemption to the mortgagee extinguished the mortgage.

2. The $18,000 loaned by Case to Cowles on the 12th of December, 1885, was never paid. There was due on that loan at the date of the decree in the lower court $22,787.50. The time of payment was extended and the note renewed from time to time, but these extensions and renewals did not pay or extinguish the debt, but at most only changed the evidence of it. The Fash note and mortgage was held as collateral security for the payment of the debt. Giving a new note for the debt did not pay the debt. Independently of any agreement to that effect, the collateral security would remain as security for the debt precisely as though there had been no renewal of the note. Jones v. Guaranty, etc., Co., 101 U. S. 622, 630; Bank v. Cheeney, 87 Ill. 602, 614; Collins v. Dawley, 4 Colo. 138; Lytle's Appeal, 36 Pa. St. 131. But, in fact, at each extension or renewal there was a specific pledge in the same terms of the same collateral security, for the payment of the debt. The recital in the renewal note of the security pledged for its payment was but a repetition and confirmation of the original pledge. The creditor never parted with the security. It remained all the time, by virtue of its first pledge, in his possession, as security for the payment of the debt due him. Notwithstanding the renewal note recited the note and mortgage were pledged to secure its payment, the pledge has relation to, and will be given effect as of, the date it was first pledged for the payment of the debt evidenced by the renewal note, if the interest of the pledgee requires it.

3. By the express terms of the instrument by which Cowles assigned to Case certain property to be sold, and the proceeds applied on Cowles' indebtedness, Case had the right to credit the proceeds on the note for $18,000, or on the note for $14,183.50, at his election. Case applied part of the proceeds on each note, as he had an undoubted right to do. The right of appropriation of payments belongs exclusively to the debtor and creditor, and no third party has a right to demand a change in the appropriation of payments assented to by them. Mack v. Adler, 22 Fed. Rep. 570; Whart. Cont. § 926; Gordon v. Hobart, 2 Story, 243, 264; 1 Suth. Dam. 411. No principle of law or equity required Case to apply the payment on his debt secured by the mortgage, instead of his unsecured debts, in order to give Fant the benefit of this mortgage security. Fant had no lien upon, or interest in, the property sold under the assignment or the proceeds derived from its sale, and Cowles had the right that belongs to every debtor to appropriate the property or its proceeds to the payment of any bona fide debt which he owed. The decree of the circuit court is reversed, and the cause remanded, with directions to render a decree declaring that the mortgage from Fash to Cowles is the first and prior lien on the mortgaged premises for the amount found due thereon at the date of the decree below, namely, $22,787.50, with interest on that sum from that date.