### RACHAL et al v. SMITH et al.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1900.)

#### No. 873.

**1. SUBROGATION TO RIGHTS OF MORTGAGEE—PAYMENT AND SATISFACTION OF MORTGAGE.**

One who loans money to a mortgagor for the express purpose of paying the mortgage debt, and who himself makes such payment, is not a volunteer; and although he has the mortgage satisfied of record, taking a new one on the same property, he is entitled to be subrogated to the lien of the prior mortgage, as against one who acquired an interest in the property before its release, and subject thereto, of which fact the second mortgagee had neither actual nor constructive notice.

**2. JUDGMENTS—CONCLUSIVENESS—RELIEF AGAINST IN EQUITY.**

A defendant in an action at law to recover possession of land, who claimed under a legal title accompanied by possession, both antedating the title under which the plaintiff claimed, is concluded as to his claim by a judgment for the plaintiff, which necessarily determines the invalidity of his title; and he cannot make such title the basis of a subsequent suit in equity to restrain the enforcement of such judgment.

Appeal from the Circuit Court of the United States for the Western District of Texas.

On December 19, 1898, Lula M. Rachal, joined by her husband, E. R. Rachal, J. W. Baylor and his wife, Emma F. Baylor, and J. D. Willis, filed their ancillary bill against the appellees, Francis Smith and S. G. Borden, praying for an injunction to restrain the appellee Smith from executing a judgment at law for lands rendered on December 7, 1898, in the case of Francis Smith against E. R. Rachal et al. On January 28, 1899, the plaintiffs, by leave of the court, filed an amended bill in the cause. The plaintiffs obtained from the court on December 21, 1898, a temporary restraining order pending the application for an injunction. On February 13, 1899, the plaintiffs obtained another order, continuing in force the former order until the final determination of the application for the writ of injunction. The subject of the controversy is a tract of land. Francis Smith obtained a judgment at law for the land, and this suit in equity is to obtain relief against the judgment at law. Darius C. Rachal owned in fee simple 16,000 acres of land in San Patricio county, Tex. He owed Shattuck & Hoffman, as trustees of the British & American Mortgage Company, Limited, $20,000, borrowed money, evidenced by a note and secured by a mortgage on the land. The mortgage bore date March 27, 1885. He also owed John Redmond a note for $10,000, borrowed money, secured likewise by a mortgage on the land. On April 12, 1888, Darius C. Rachal sold and conveyed to P. A. Hunter, his son-in-law, and F. S. Rachal, his son, the 16,000 acres, except about 200 acres The consideration recited in the deed was $48,865.20. The grantees assumed, as a part of the consideration, the payment of the two mortgages on the land. The plaintiffs claimed and alleged in their bill that in the summer or fall of the year 1888 the plaintiff E. R. Rachal, acting for and on behalf of his wife, the plaintiff Lula M. Rachal, made from Darius C. Rachal, F. S. Rachal, and P. A. Hunter a parol purchase for his wife of 1,626 acres (described in the bill) of the aforesaid 16,000-acre tract of land; that this tract was sold to Lula M. Rachal as her separate property and estate, and to her sole and separate use and benefit, and with the distinct understanding that the deed to her should so recite and be made; that the consideration for the 1,626-acre tract was $4 an acre, which was actually paid at the time. A deed was not made at the time, because a prior survey was necessary, and there was no surveyor in the county, and the survey was not made until in the spring of 1889. In 1888 Lula M. Rachal took possession of the 1,626 acres so purchased by her, and began to improve them. She built a house on the land. In 1889 she put a wire fence around the land, excepting about 126 acres, which she sold to Baylor.

The original and amended bills contain the following averments: "That the plaintiff Baylor and wife purchased in January, 1889, from Lula M. Rachal 126 acres of the 1,626-acre tract, and immediately took possession of them and inclosed them with a wire fence, and made other improvements; and on April 9, 1895, the defendant S. G. Borden purchased of Lula M. Rachal and her husband, by warranty deed, 350 acres of the 1,626-acre tract, for a consideration of $1,800, which was paid in full; and the plaintiff J. D. Willis purchased from D. C. Rachal in the fall of 1888 50 acres of his 16,000-acre tract at $14 an acre, which he paid for, improved, and occupied with his family, but did not obtain his deed until March 26, 1890. That at the time of Lula M. Rachal's purchase it was distinctly understood that her grantors should remove all liens and incumbrances from the tract by the payment of the consideration which P. A. Hunter and F. S. Rachal had agreed to pay for the 16,000-acre tract, and the same agreement was made with J. D. Willis at the time of his purchase, and that the whole of the consideration was fully paid off and extinguished on January 15, 1890. That on January 15, 1890, F. S. Rachal, P. A. Hunter, and Darius C. Rachal and wife executed a deed of trust on the whole of the 16,000-acre tract of land to a trustee to secure the Alliance Trust Company in a loan of $34,000; and on May 27, 1892, the same parties gave to a trustee a deed of trust on the 16,000-acre tract, except the tract owned by Lula M. Rachal, J. W. Baylor, and J. D. Willis, to secure the defendant Francis Smith in a loan of $9,000. The deeds of trust contained powers of sale, and on October 15, 1897, the trustee sold the whole of the 16,000-acre tract under the

power in the deed of trust, when the defendant Smith purchased it for $10,000, and received a deed from the trustee, and brought his action at law to recover possession and obtained judgment; and S. G. Borden obtained judgment upon his plea in reconvention against E. R. Rachal upon his warranty for $1,800, and Borden refused to join in this bill. That defendant Francis Smith, while acting as agent for the Alliance Trust Company in negotiating the loan of $34,-000, and Thompson, the trustee in the deed of trust, did in the latter part of December, 1889, visit and inspect the 16,000-acre tract of land, with the view of making the loan, and, while on the premises inspecting them, saw Lula M. Rachal living on and in possession of her 1,500-acre tract, and saw all the improvements made on it by her, including the fence inclosing it, and was notified that she owned it as her separate property, and was a married woman and head of a family, and wife of E. R. Rachal, and in like manner saw the possession and improvements of Baylor and wife and Willis, and before the execution of the two deeds of trust had full notice of the rights of the plaintiffs. That the tracts of land owned by the plaintiffs and S. G. Borden were included in the deed of trust of January, 1890, by mistake; that it was agreed between Darius C. Rachal, acting for himself, F. S. Rachal, and P. A. Hunter, and defendant Smith, as agent of the Alliance Trust Company, that the lands claimed by the plaintiffs and the defendant Borden should not be included in the deed of trust of January 15, 1890, and that they have a complete equitable title thereto, superior to the title of Smith. That pursuant to the agreement of the parties the Shattuck & Hoffman and Redmond notes were, by the procurement of Smith, as the agent of the Alliance Trust Company, paid off, and marked 'Paid' on their face, and canceled and extinguished, and the deeds of trust by which they were secured were, at the request of Smith, released in the manner required by law. That there never was an assignment of the Shattuck & Hoffman and Redmond notes to the Alliance Trust Company or to Smith, or any foreclosure of the deeds of trust securing them or any rights asserted under them, or any claim that they were valid, subsisting debts, until since filing this suit, but that the Alliance Trust Company and Smith have treated the notes as extinguished. That the lands embraced in the deed of trust of January 15, 1890, excluding the tracts claimed by the plaintiffs and the defendant Borden, were then of the value of $90,000; that the plaintiffs have, in good faith, with the understanding that all liens would be removed therefrom, made permanent and valuable improvements on the lands, and have built thereon their homes and reared their families; and Smith, with a knowledge of their rights, is seeking to wrongfully acquire both their lands and the improvements; and that, if the preliminary writ of injunction is not granted, they will be immediately turned out of possession, and the injury to them will be immediate, certain, great, and irreparable. That neither the plaintiffs nor the defendant Borden was a party to any of the deeds of trust on said land mentioned in the pleadings, nor did they, or either of them, derive any benefit from the loans; nor was either of them in any way connected with the sale under the powers of the deeds of trust at which Smith purchased, nor the deeds made thereunder to Smith, but they are a cloud upon their title."

The issues will be shown by the following condensed statement of the answer filed by defendants, Francis Smith and S. G. Borden. The answer alleges: "That on the 4th of December, 1889, the two mortgage debts—one for $20,000, and the other for $10,000—became due; and in order to get money at a cheaper rate of interest, and to extend the above loans, Darius C. Rachal, F. S. Rachal, and P. A. Hunter made an application in writing to Francis Smith & Co., agents of the Alliance Trust Company, to borrow $34,000. In the application they stated that the money was wanted for the purpose of paying the above mortgages, and the Alliance Trust Company was authorized to pay them out of the proceeds of the new loan. In the application they represented that the 16,351 acres of land were owned by the applicants, and were rented to and occupied by various tenants. That on the 15th of January, 1890, the Alliance Trust Company, relying upon the representation of the applicants, believing it to be true, loaned them the sum of $34,000, for the security of which they executed a deed of trust upon the whole property; and the deed of trust was duly recorded on the 15th of January, 1890. In making the mortgages it was agreed and understood that they were made for the purpose of

101 F.—11

taking up and extending the two previous loans, whereby the Alliance Trust Company should be subrogated to the liens of the two previous deeds of trust. That after the deed of trust was recorded the Alliance Trust Company paid to the British & American Mortgage Company, Limited, and to John Redmond, the principal and interest due upon their several mortgages; and releases were delivered to the Alliance Trust Company, and they were placed on record by it. That on the 4th of September, 1897, Darius C. Rachal, F. S. Rachal, and P. A. Hunter having failed and refused to pay the note due to the Alliance Trust Company, the property was duly sold by the trustee, and purchased by Francis Smith, who holds it as trustee for the Alliance Trust Company. The defendant denies that the surrender and cancellation of the notes and deeds of trust mentioned above were intended by the parties to operate as a discharge of the liens thereon as against the Alliance Trust Company, but were made merely for the purpose of carrying into effect the subrogation, and not for the purpose of discharging the liens in favor of any of the plaintiffs. That the appellants at the date of their pretended parol purchases had notice of the two liens aforesaid, and their purchases, if any, were made subject to the liens, and defendant denies that it was ever at any time agreed and understood that the land purchased by them should not be included in the deed of trust in favor of the Alliance Trust Company. The defendant Smith admitted that he inspected the land before making the loan of $34,000, but denies that he had any notice that the property in controversy was either owned or claimed by the plaintiffs, or either of them, but it was represented to him by the borrowers that the title to all of the land was in them, and it was occupied only by their tenants. The defendants denied that the lands claimed by the plaintiffs were included in the deed of trust to the Alliance Trust Company by mutual mistake. On the contrary, the land claimed by the plaintiffs was pointed out as a part of the security, the whole 16,351 acres then being in a solid body; and, had the 1,500 acres claimed by the plaintiffs been excepted, he would not have made the loan. The defendant denied that when he inspected the land it was pointed out as belonging to the plaintiffs. On the contrary, he was told by Darius C. Rachel that the land was owned by F. S. Rachal and Peter A. Hunter, and occupied by their tenants; that he expected to make a deed to E. R. Rachal of two hundred acres when his debts were settled. The defendant thereupon refused to loan the money unless E. R. Rachal made a disclaimer, whereupon E. R. Rachal made a disclaimer in writing, to the effect that he was living upon a ranch owned by Rachal and Hunter, and that he had no right, title, or claim whatever in the land occupied by him. That at the time the disclaimer was made no title had ever passed out of Darius C. Rachal, F. S. Rachal, and P. A. Hunter into Lula M. Rachal or the other appellants. The defendant Smith admits that he had in his possession the two notes for $20,000 and $10,000, and they were marked 'Paid' upon their faces, and he has in his possession releases of the two mortgages of $20,000 and $10,000, which have been duly placed on record. The defendant also admits that at the time he loaned the money for the Alliance Trust Company the 16,351 acres were worth the amount of the loan. He denies that they are now worth anything like that sum. He admits that on the 27th day of May, 1892, he loaned Rachal and Hunter an additional $9,000, because Rachal and Hunter gave him, as additional security, vendor-lien notes aggregating $21,800."

Many depositions and affidavits and documents were used in evidence by the parties, tending to prove the averments of the bill and answer, respectively. Such parts of this evidence as are deemed pertinent to the questions discussed will be stated in the opinion. The application for a preliminary writ of injunction in the case was heard before Hon. T. S. MAXEY, United States district judge, and on August 23, 1899, he refused the writ, and dissolved the temporary restraining order that had been granted in the case. The plaintiffs Lula M. Rachal, E. R. Rachal, and J. D. Willis appealed to this court, and assign as error the action of the court in refusing the injunction and dissolving the restraining order.

C. L. Bates, for appellants.

Upson & Newton and W. W. King, for appellee Francis Smith.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Darius C. Rachal was the owner in fee simple of the real estate in controversy. The entire tract owned by him embraced 16,000 acres. On March 27, 1885, having borrowed $20,000 of the British & American Mortgage Company, Limited, he executed a deed of trust on the land to secure the debt. On September 15, 1887, he also executed a second mortgage on the land to secure $10,000 borrowed of John Redmond. Darius C. Rachal's wife joined him in the execution of these mortgages, and they were duly recorded. There is no dispute as to their validity. It is well to note that Darius C. Rachal was the owner of these lands at the beginning of the transactions out of which the litigation arises, and that it is unquestioned that they were then subject to the two mortgages for $30,000, with accrued interest. On April 12, 1888, Darius C. Rachal conveyed, with warranty of title, all these lands, except 200 acres, to Frank S. Rachal, his son, and P. A. Hunter, his son-in-law. The grantees assumed to pay the two mortgages. The recited consideration out of which the mortgages were to be paid was $48,865.20. This sale and conveyance made F. S. Rachal and P. A. Hunter the owners in fee simple of the land, but it remained subject to the two mortgages. With the title and ownership standing this way, the trade was made on which the plaintiff Lula M. Rachal bases her right to equitable relief. She made a parol purchase in the summer or fall of 1888 of 1,626 acres of the land at $4 an acre. She received no conveyance at first, but took possession and fenced and improved the land. Finally, on March 26, 1890, she obtained a conveyance of the land, dated November 1, 1889, but not acknowledged until April 14, 1890, and it was recorded on March 21, 1891. This deed was executed by Darius C. Rachal and his grantees in the conveyance of April 12, 1888,—F. S. Rachal and P. A. Hunter. Lula M. Rachal made sales of small parts of the tract conveyed to her, but, in the view we take of the case, these transactions are not material. The two mortgages on all the land remained unpaid. On December 4, 1889, Darius C. Rachal, F. S. Rachal, and P. A. Hunter made written application to Francis Smith, one of the appellees who was engaged in negotiating loans, to borrow $34,000, at 9 per cent. interest, to be used in paying off the two mortgages on the land. The written application for the loan asserted that the title to the lands was in F. S. Rachal and P. A. Hunter, and that the lands were in the possession of Darius C. Rachal and P. A. Hunter. The fact that the land had on it the two mortgages was stated, and the applicants authorized Francis Smith, if the loan was made, to pay the mortgages out of it. These mortgages were bearing 12 per cent. interest. After examining the real estate, Francis Smith agreed to make the loan applied for. In this he acted as the agent of the Alliance Trust Company. On the 15th of January, 1890, Francis Smith, as such agent, lent the $34,000 to the applicants Darius C. Rachal, F. S. Rachal, and P. A. Hunter, who executed a deed of trust on the 16,000 acres of land to A. S. Thompson, as trustee, to secure the loan. After the deed of trust was

executed, Francis Smith paid out of the loan to the owner of the $20,000 mortgage debt the amount thereof, with interest; and he also paid out of the loan to the owner of the $10,000 mortgage the amount thereof, with interest. Both debts, with interest, amounted to $32,440. Francis Smith did not have these debts transferred to him or to the Alliance Trust Company. He had the owners of the debts, who received the money on them, to execute releases, which were recorded. Francis Smith received into his possession the releases and the original $20,000 mortgage and note, and the original $10,000 mortgage and note, and he still holds them in his possession. Darius C. Rachal, F. S. Rachal, and P. A. Hunter having failed to pay the loan of $34,000 when due, and the trustee failing to act, a substituted trustee sold the real estate on the 4th of September, 1897, under the power of sale in the deed of trust; and Francis Smith became the purchaser, and received a conveyance from the substituted trustee. Francis Smith then sued, in an action at law in the circuit court of the United States for the Western district of Texas, to recover the lands, and on the 7th day of December, 1898, had judgment entered in his favor for them. This suit in equity is to enjoin the enforcement of the judgment at law.

On the facts of this case, is the Alliance Trust Company subrogated to the rights of the original mortgagees? The contention of the learned counsel for the appellees is that Francis Smith, as the agent of the Alliance Trust Company, having furnished money to the Rachals and Hunter to pay off the two mortgages, and the same having been paid by him at the request of the borrowers, he is thereby subrogated to the previous liens, and equity keeps them alive for his use and benefit, to the exclusion of Lula M. Rachal, who bought subject to the mortgages, but before the lien of the Alliance Trust Company. If this contention is well founded, it is conclusive in equity against the appellants; for Lula M. Rachal has no equity superior to the mortgagees, who held recorded liens on the lands at the time of her parol purchase. She clearly took the land subject to the two mortgages on it. If Francis Smith, as the agent of the Alliance Trust Company, had not paid the mortgages, they would now be on the land, and would be superior to the equity asserted by Lula M. Rachal. If we hold that the Alliance Trust Company is the equitable owner of the two mortgages, by applying the doctrine of subrogation, Lula M. Rachal is in no worse position than she would have been if the mortgages had never been paid. She does not and cannot complain that the subrogation makes her position less favorable than it would have been if Francis Smith had not advanced the money to pay the mortgages. Her claim, in effect, is that she, and not the Alliance Trust Company, should have the benefit of the payment made by Francis Smith as its agent.

Since the equitable doctrine of subrogation was ingrafted on the English equity jurisprudence from the civil law, it has been steadily growing in importance, and widening in its sphere of application. It is a creation of equity, and is administered in the furtherance

of justice. It is applied to give the party who actually pays the debt the full benefit and advantage of such payment. It has been long settled, and it is not controverted, that the doctrine applies where a junior incumbrancer discharges the prior incumbrance, and where the surety pays the debt of his principal, and in cases of like character. A just limitation of the application of the doctrine is that it does not apply to payments made by a mere volunteer or stranger. "No one can be allowed to intrude himself upon another as his surety; and therefore if a man voluntarily pays the debt of another, without any agreement to that effect with the debtor, he cannot take the place of the creditor, or in any way recover the money so paid, of the debtor, because the law does not permit one man thus officiously and without solicitation to intermeddle with the affairs of another." Winder v. Diffenderffer, 2 Bland, 199; Harris, Subr. p. 558, § 810, note h. This objection is made in the present case. It is urged that Francis Smith, in advancing the money to pay the mortgages, was a mere volunteer, within the meaning of the authorities, and that the doctrine of subrogation, therefore, does not apply. It will be remembered that the money was lent and applied to the payment of the mortgages at the request of the debtors, the new mortgage being taken on the same lands covered by the older mortgages. "A person who has lent money to a debtor may be subrogated by the debtor to the creditor's rights; and if the party who has agreed to advance the money for the purpose employed it himself in paying the debt, and discharging the incumbrance on land given for its security, he is not to be regarded as a stranger. Dix. Subr. 165; Payne v. Hathaway, 3 Vt. 212. The real question in all such cases is whether the payment made by the stranger was a loan to the debtor through a mere desire to aid him, or whether it was made with the expectation of being substituted in the place of the creditor. If the former is the case, he is not entitled to subrogation; if the latter, he is. If a person pays a debt at the instance, request, or solicitation of the debtor, he is neither a volunteer, stranger, or intermeddler; nor is the debt regarded as extinguished, if justice requires that it should be kept alive for the benefit of the one advancing the money, who thereby becomes the creditor. Association v. Thompson, 32 N. J. Eq. 133." Harris, Subr. p. 559, § 811, note 1.

Pomeroy, after stating the general rule as to subrogation or equitable assignment in cases of payments made by persons who have subsequent interest in the premises, adds:

"The doctrine is also justly extended by analogy to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party, and for his benefit. Such a person is in no true sense a mere stranger and volunteer." 3 Pom. Eq. Jur. (1883) § 1212.

If Francis Smith, instead of taking a release of the two mortgages, had taken an assignment of them, the questions here discussed would never have been raised. As he paid off the mortgages at the request of the debtors, they would unquestionably have been assigned to him without recourse, had he requested it. He was

entitled to an assignment. Twombly v. Cassidy, 82 N. Y. 155. In equity, whatever rights accrue from the payment arise from the fact of payment. If the one who makes the payment is entitled to the benefit of the doctrine of subrogation, he becomes the equitable assignee of the claim paid. For this reason Pomeroy prefers and uses the term "equitable assignment," instead of "subrogation." 3 Pom. Eq. Jur. (1883) § 1212, note 1. If it be correct that Francis Smith's position was not that of a volunteer or stranger, then it is immaterial that a release, instead of an assignment, was made. Where the rights of innocent third persons have not intervened, the release will not prevent the person making the payment from becoming the equitable assignee of the claim paid. Barnes v. Mott, 64 N. Y. 397, 401; Cobb v. Dyer, 69 Me. 494; Dillon v. Kauffman, 58 Tex. 696.

We decide that on the facts of the case, in the absence of any agreement on the subject, the Alliance Trust Company is subrogated to the rights of the mortgagees, whose claims it advanced the money to discharge. The following Texas cases are cited as tending to sustain our conclusion: Whitselle v. Loan Agency (Tex. Civ. App.) 27 S. W. 309; Ploeger v. Johnson (Tex. Civ. App.) 26 S. W. 432; Bank v. Ackerman, 70 Tex. 315, 320, 8 S. W. 45; Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758; Pridgen v. Warn, 79 Tex. 588, 593, 15 S. W. 559; Hicks v. Morris, 57 Tex. 658; Focke v. Weishuhu, 55 Tex. 33; Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Cason v. Connor, 83 Tex. 26, 18 S. W. 668.

This conclusion alone would lead to an affirmance of the decree refusing the injunction and dissolving the restraining order, but there is another view of the case that leads to the same result. If Lula M. Rachal has the superior claim to the lands in question, why could she not successfully assert it at law? The suit at law was not brought by Francis Smith until October 16, 1897. At that time her parol purchase, according to the averments of the bill, had been ratified by the execution of a deed. It is alleged that she obtained the conveyance in its corrected form in time to have it entered of record on March 1, 1891. For five or six years before the suit at law was brought on the averments of the bill, she was in possession of the land, and in possession of it by a written title. If her averments and contentions are true as to her purchase, possession, and deed, did she not have the superior title at law? It is true that at the time she made the purchase the mortgages were on the land, and then unpaid; but, if they stood in the way of her defense at law while they were unpaid, it appears from the bill that they were paid and releases executed on the 15th of January, 1890, long before the suit was brought. It seems to us that, in deciding the case at law in favor of the plaintiff Francis Smith, the court necessarily held that the deed conveying the lands to Lula M. Rachal was for some reason invalid. Both parties to the suit at law deraigned title from Darius C. Rachal. The title offered by Lula M. Rachal was prior in point of time to the titles relied on by Francis Smith, and, unless the evidence showed her title to be invalid for fraud or for other legal reasons, she could successfully defend on her prior title. No bill of exceptions or writ of error was taken in the suit at law, and

that case is not before this court. It is only relevant to this litigation in showing, if it does show, that the plaintiff here, Lula M. Rachal, asserts no title here that was not, or that could not, if valid, have been, successfully asserted in the case at law. Her title being the older one, and being a legal title by deed, if the court had held it to be valid she would have prevailed at law; and Francis Smith or the Alliance Trust Company would have been forced to apply to equity for relief, if he desired to avail himself of the doctrine of subrogation to enforce the two mortgages on the land which were older than the title of Lula M. Rachal. The decree refusing the injunction and dissolving the restraining order is affirmed.