BARNES et al. v. CADY.

(Circuit Court of Appeals, Sixth Circuit.   May 5, 1916.)

No. 2660.

1. JUDGMENT ⬡⟹720—CONCLUSIVENESS—MATTERS CONCLUDED.
   While a decree of a court of competent jurisdiction upon a question in-
volved in one suit is conclusive as to that question in another suit between
the same parties, the estoppel operates only as to matters in issue, or
points or questions actually decided.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig.
⬡⟹720.]

2. MORTGAGES ⬡⟹497(2)—FORECLOSURE DECREE—EFFECT—BAR.
   In a suit to foreclose a prior mortgage on land, the petition charged
that the trustee of a subsequent mortgage had or claimed some interest
in the premises, and prayed that he be compelled to set up the same or
be forever barred from asserting it.   The trustee appeared, but defaulted,
and a foreclosure decree was entered, declaring that he had no interest
in, lien on, or claim to the premises or any part thereof.   Before sale,
the mortgagor conveyed the property to his brother, who paid the first
mortgage debt and procured a dismissal of the suit and release from such
mortgage.   Held, that the trustee's default operated only as an admission
of the first mortgagor's prior interest, and hence the decree was not a bar
to the assertion of the second mortgage lien.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1472; Dec.
Dig. ⬡⟹497(2).]

3. JUDGMENT ⬡⟹243—FORECLOSURE DECREE—JURISDICTION OF COURT.
   In such case, the court was without jurisdiction to determine the validi-
ty of the second mortgage.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 428; Dec. Dig.
⬡⟹243.]

4. SUBROGATION ⬡⟹14(3)—PURCHASE FROM MORTGAGOR—FORECLOSURE—PAY-
   MENT OF DEBT.
   A suit having been instituted to foreclose a first mortgage on land, and
a decree having been entered barring the interest of the second mortgagee,
who was made a party, but failed to answer, the mortgagor before sale
conveyed the property to his brother, who had paid the first mortgage
and procured a dismissal of the suit and a release of the first mortgage,
held, that the brother, notwithstanding the conveyance from the mort-
gagor was subrogated to the rights of the first mortgagee as against the
second mortgagee; the estates not merging, and it being the intention of
the brother to acquire the interest of the first mortgagee.
   [Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 38; Dec. Dig.
⬡⟹14(3).]

Appeal from the District Court of the United States for the West-
ern Division of the Northern District of Ohio; John M. Killits, Judge.

Bill by Edward H. Cady, trustee for the Ohio Savings Bank & Trust
Company, against John E. Barnes and others.   From a decree (208
Fed. 361) for complainant, defendants appeal.   Reversed and re-
manded.

See, also, 208 Fed. 359.

This is an appeal from a decree ordering a foreclosure of a mort-
gage on certain land and the sale of such land to satisfy such mort-
gage.   The material facts and questions involved are stated in the
opinion of the District Court as follows:

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"About April 1, 1908, the Barnes Grain & Commission Company, of which one Charles W. Barnes was president and manager, was indebted to the Ohio Savings Bank & Trust Company, in the sum of about $2,900, on several promissory notes. In order to secure his indebtedness and such further advances as the bank might make said Charles W. Barnes, his wife joining him, and his father executed and delivered to Edward H. Cady in trust for the bank a deed conveying the property involved in this litigation, it being understood that the deed, although absolute in form, should be treated as a mortgage. At this time the land in question had already been conveyed by mortgage still subsisting to the Fremont Savings Bank Company, of Fremont, Ohio, and whatever rights then were acquired by Cady as trustee were subject to said mortgage.  *  *  *

"All the parties in interest prior to December 18, 1911, were residents of Ohio and within the jurisdiction of this court. The Fremont Savings Bank Company brought an action in the court of common pleas of Sandusky county to foreclose its mortgage, making Charles W. Barnes and wife and Cady and wife parties defendant. Cady entered his appearance, but defaulted by answer. Barnes answered, taking issue solely with the plaintiff in the action and raising no issue between himself and Cady. Plaintiff's petition in the case, touching the Cady interest, simply alleged: 'That the defendants Edward H. Cady and Emma W. Cady have or claim to have some lien or interest in or to said premises, and plaintiff asks that they be compelled to set the same up or be forever shut off from asserting the same.' A decree of foreclosure was entered in favor of the plaintiff bank, in which a finding was had against the Cadys in these terms: 'And the court further finds that the said defendant Edward H. Cady and the defendant Emma W. Cady have no interest in or lien on or claim to said premises or any part thereof.'

"An order of sale was allowed and issued and the property advertised to be sold December 19, 1911.  *  *  *  With his interest thus subsisting in the property, on the 18th of December Barnes effected a sale of this property to his brother, John E. Barnes, of Chicago, one of the defendants in the case here. Having agreed upon the terms of sale, the two brothers visited Fremont, consulted an attorney, who assured them that the record effectually shut out as to all persons the Cady interest, and consummated their business by paying up and causing to be entered as satisfied on the court records the judgment in behalf of the bank, and having the action, after payment of the costs by them, dismissed without further procedure and obtaining a release and discharge of the mortgage from the bank and causing the same to be entered of record in the office of the county recorder. Thereupon a conveyance was made of this property by Charles W. Barnes and wife to John E. Barnes.

"There can be no question whatever upon the record before us but that the payment of the bank's judgment and court costs by John E. Barnes was part of the consideration for the conveyance of this property to him. A small balance remaining after the payment of these claims was paid to Charles W. Barnes. Cady, as trustee, thereafter commenced in this court the action now being determined to foreclose the lien in the nature of a mortgage held by him upon this property by virtue of the deed to him above referred to, and the facts we have just recited are set up by way of defense by John E. Barnes and wife, with the further claim that out of these transactions grew a right of subrogation to Barnes of the lien of the Fremont Savings Bank Company.

"Three questions were presented on the hearing. The first one of fact the court has already disposed of. The other two are: (1) Were the rights of Cady under his deed foreclosed by the proceedings in the Sandusky common pleas court in favor of the defendant John E. Barnes, as a successor in interest to Charles W. Barnes? (2) Is John E. Barnes, under the circumstances, subrogated to the rights of the Fremont Savings Bank Company in its decree foreclosing its mortgage?  *  *  *  *  "

B. W. Johnson, of Toledo, Ohio, for appellants.

H. W. Isenberg, of Toledo, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge (after stating the facts as above). We have carefully examined the record and are satisfied that it supports the statement of facts just quoted. It should, however, be added that defendant John Barnes testified that he "understood that lien had been wiped out" and that he "didn't want to take it under any condition unless everything was absolutely clear," and that there was no evidence to the contrary. The court below decided both of the questions referred to in favor of the plaintiff, holding that the decree foreclosing the first mortgage was not decisive of any right of the holder of the second mortgage, except that of priority of lien, and that defendant, in paying the first mortgage, paid his own debt and therefore extinguished such mortgage, thereby promoting the second mortgage to the rank of the first, and that under these circumstances he was not entitled to be subrogated to the previously existing rights of the senior mortgagee as against the junior mortgagee.

[1-3] 1. We agree with the conclusion of the trial court that the present plaintiff is not precluded from maintaining this suit by the decree in the former foreclosure suit. The principles governing the application to such a case of the doctrine of res judicata have been stated by the Supreme Court as follows:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict is rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action, * * * the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195.

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible." Russell v. Place, 94 U. S. 606, 24 L. Ed. 214.

"Is this a case of estoppel by judgment? The law in respect to such estoppel was fully considered and determined by this court in the case of Cromwell v. County of Sac. 94 U. S. 351 [24 L. Ed. 195]. It was there decided that when the second suit is upon the same cause of action, and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the first action; but when the second suit is upon a different cause of action, though between the same parties, the judgment in the former action operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined." Nesbit v. Riverside Independent District, 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562.

"The estoppel operates only as to matters in issue or points controverted and actually decided." Radford v. Myers, 231 U. S. 725, 34 Sup. Ct. 249, 58 L. Ed. 454.

As was said in Union Central Life Insurance Company v. Drake, 214 Fed. 536, 131 C. C. A. 82:

"Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action, which may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel from litigating this issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former action."

Applying these principles to the instant case, we are of the opinion that it has not been shown that the question of the existence or validity of the mortgage for the foreclosure of which this suit is brought was involved, litigated, or determined in the previous suit brought to foreclose the first mortgage. The mere fact that the decree of foreclosure in the first suit purported to find that the present plaintiff had no interest in the premises is, of course, not sufficient to give to such decree the effect claimed by defendants here. In the language of the Supreme Court in Barnes v. Chicago, Milwaukee & St. Paul Railway Company, 122 U. S. 1, 7 Sup. Ct. 1043, 30 L. Ed. 1128:

"Every decree in a suit in equity must be considered in connection with the pleadings, and, if its language is broader than is required, it will be limited by construction so that its effect shall be such, and such only, as is needed for the purposes of the case that has been made and the issues that have been decided."

The petition in the former suit was filed according to the answer of appellant to foreclose the mortgage of the Fremont Savings Bank "as

a first and prior lien" on the premises involved. Such petition alleged, as the only reference to the present plaintiff and his wife that they "have or claim some lien or interest in said premises, and plaintiff asks that they be compelled to set the same up or be forever cut off from asserting the same." It prayed for judgment against defendants Barnes and foreclosure of said mortgage and "sale of said premises free from all claims of all defendants." The decree recited that the defendants Cady, who had entered their appearance, were in default for answer, "and that the allegations of the petition are thereby confessed by them to be true. And on consideration thereof the court find, on the issues joined, for the plaintiff, and that there is due the plaintiff, from the defendant Charles W. Barnes and James A. Barnes" a certain sum, and that unless said sum were paid within a certain time "the defendants' equity of redemption be foreclosed and said premises be sold" as upon execution. No other reference to the mortgage involved here was made by any of the parties to that suit.

We think it apparent that the only issue there decided, or necessarily involved, between the first and second mortgagees was the priority of their respective mortgages, and that the only adjudication intended, and therefore effected, by the court as between said mortgagees was its decree that the first mortgage was a good and valid lien and that in default of the required payment thereof said land should be sold to satisfy such mortgage free from any claims of the junior mortgagee. We think that the following language, used in the case of Lincoln National Bank v. Virgin, 36 Neb. 735, 55 N. W. 218, 38 Am. St. Rep. 747, is applicable here:

"There is no doubt of the jurisdiction of a court of equity upon proper pleadings in a foreclosure proceeding, to determine the rights of all parties thereto with respect to the subject of the controversy, whether plaintiffs or defendants. But the power to conclude parties not claiming adversely to the plaintiff, whether subsequent mortgagees, or mortgagor and mortgagee, so as to prevent them from afterwards asserting their rights as against each other, depends upon whether such power has been invoked by one or more of the parties thus interested. In the judgment pleaded as a bar in this case, the only relief sought was the foreclosure of the Neir mortgage. In his petition the plaintiff therein alleged, in effect, that his mortgage was the prior lien. That was a proposition which the Merchants' Bank could not controvert. It is true it might have answered (assuming that it was still the owner of the mortgage) and by cross-bill secured an accounting and decree against the mortgagors, and an order for payment from the proceeds of the mortgaged property after the satisfaction of the prior lien. * * * The Merchants' Bank, by its default, must be held to have confessed the cause of action of the plaintiff therein, and to that extent the decree is conclusive. But the question of the validity of the mortgage now under consideration, as a second lien, was not presented by the petition, and the bank, as a defendant in that action, was justified in assuming that Neir, the plaintiff, was merely seeking to assert his own lien."

No case has been cited, and we have found none, holding that under the circumstances disclosed here the rights of a junior mortgagee, as against the mortgagor, were divested by such a decree. The cases cited by appellant involved foreclosure sales or questions relating to priority of lien, and are not applicable. Nor does the fact that the parties to this suit were joined as defendants in the previous suit, no issue having been framed between them, give to the decree therein the

effect of an adjudication of any of their rights as between themselves. As was said in Koelsch v. Mixer, 52 Ohio St. 207, 39 N. E. 417:

"Whilst the exact limits of the doctrine of res judicata in its application to some cases, are not definitely settled, it is accepted as generally true, that the judgment relied on for that effect in subsequent litigation, must have been pronounced upon the same issues, between the same parties, or their privies, standing in an adversary character to one another. By this is not meant that they should have stood upon the record as plaintiff and defendant, but that this should have been their real attitude upon the issues tried and determined."

Or, as the rule is expressed in Moehlenpah v. Mayhew, 138 Wis. 561, 119 N. W. 826:

"In a subsequent litigation between themselves, parties who were codefendants in a former action are not concluded by the judgment in such former action, unless there was an issue framed between such codefendants covering the point in question, or unless the plaintiff in the former action made a claim against each defendant which negatived in effect the right thereafter claimed by the other against his codefendant."

As we have pointed out, no issue was framed between the codefendants in question, and we think that the decree of foreclosure did not, and was not intended to, determine any controversy between them. If, however, it was intended by such decree to determine as between the two defendants the validity or existence of the junior mortgage, the decree was, to that extent, beyond the jurisdiction of the court, and void. As was said by the Supreme Court in Graham v. Railroad Co., 70 U. S. (3 Wall.) 704, 18 L. Ed. 247:

"It is true that it is the constant practice of courts of equity to decree between codefendants upon proper proofs, and under pleadings between plaintiffs and defendants, which bring the respective claims and rights of such codefendants between themselves under judicial cognizance. In the case of Farquharson v. Seton [5 Russel, 45], cited by counsel, the pleadings showed that Farquharson, as a codefendant with Seton, in another suit, had, by answer, set up the same case against him that he afterward set up by bill. In the former suit the decree had been against Farquharson, and he afterward sought to renew the litigation by an original proceeding, and it was held properly that the former decree, though between codefendants, was a bar. So in the case of Chamley v. Lord Dunsany [2 Schoales & Lefroy, 718], the general litigation was for the settling and marshaling of incumbrances, and it was held that where a case was made out between defendants, by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity was entitled to make a decree between the defendants. In this case the decree was between defendants who asserted adverse interests in the incumbered estate. But neither of these cases assert the doctrine maintained here for the appellants, that a court of equity may decree between defendants when neither pleadings nor proofs show any controversy or adverse interest between them. Nor have we been referred to any case which does assert that doctrine."

The doctrine is, of course, well settled to the contrary. The rule is thus stated in 23 Cyc. 1318:

"Since a judgment is not valid which is rendered without jurisdiction of the question or issue decided, and since a void judgment creates no estoppel, it follows that if the court assumes to pass judgment upon a point or question not submitted to its decision by the parties in their pleadings, nor drawn into controversy by the course of the evidence, the judgment to that extent is not conclusive in a subsequent proceeding."

The rule is recognized in Ohio. In applying the doctrine in Commercial Bank v. Buckingham, 12 Ohio St. 402, the court said:

"As the pleadings stood, we think it clear, that the court, in assuming to determine the rights of the defendants, as against each other, was exercising a jurisdiction which had not been invoked, and its adjudication was, so far, coram non judice."

Appellants urge that, since the instant case was decided by the District Court, the Supreme Court of Ohio has affirmed the decree of the court of common pleas in the first foreclosure case mentioned, and that the issue involved in this branch of the case before us was thereby finally decided in appellant's favor, and we are asked to permit the filing in this court of a supplemental answer setting up such adjudication. But the record presented fails to make it clear that either the court of common pleas by its action subsequent to the original decree of foreclosure, or the Supreme Court of Ohio through its action invoked, has decided any question involving the existence or validity of the mortgage of appellee or any question involved in this suit. The application for leave to file supplemental answer should be denied for this reason if for no other.

For the reasons stated we think that the decree in the first foreclosure suit did not divest the appellee in the present case of his rights as mortgagee as between himself and the mortgagor, or preclude him from maintaining this suit.

[4] 2. We cannot, however, agree with the conclusion of the trial court that defendant is not entitled to be subrogated to the rights of the holder of the mortgage paid by him under the circumstances disclosed. It is manifest that in making such payment defendant intended to acquire, and supposed that he was acquiring, the interest in the premises held by the holder of such mortgage. He had not assumed the mortgage and was under no obligation, to either the mortgagor or mortgagee, to pay it. Nor was it his purpose to make a voluntary payment on behalf of such mortgagor. On the contrary, his sole object was the purchase of the land covered by this mortgage, which he supposed to be the only incumbrance thereon; and as one step in such purchase he sought, by paying the mortgagee to obtain the title of the holder thereof. In equity, therefore, he must be considered as the equitable assignee of such holder, and subrogated to the rights of the latter, as fully as if he had taken an actual assignment. Rachal v. Smith, 101 Fed. 159, 42 C. C. A. 297; Citizens' National Bank v. Wert (C. C.) 26 Fed. 294; Edwards v. Davenport (C. C.) 20 Fed. 756; Straman v. Rechtine, 58 Ohio St. 443, 51 N. E. 44; Amick v. Woodworth, 58 Ohio St. 86, 50 N. E. 437; Young v. Morgan, 89 Ill. 199; Smith v. Dinsmoor, 119 Ill. 656, 4 N. E. 648; Wilkins, Neely & Jones v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204.

"Subrogation is nothing more than an equitable assignment. When equity and good conscience requires the assignment to be made, subrogation, if necessary, will be allowed." National Surety Co. v. State Savings Bank, 156 Fed. 21, 84 C. C. A. 187, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421.

"Under some circumstances the payment of a mortgage does not satisfy it or destroy its lien, because equity regards the person making the payment as the owner thereof for certain definite purposes and keeps it alive and pre-

serves its lien for his benefit and security. According to the well established principles upon which the doctrine of equitable assignment by subrogation rests, if the person paying stands in such a relation to the premises that his interest, whether legal or equitable, can not otherwise be adequately protected, the transaction will be treated in equity as an assignment. Sheldon on Subrogation, §§ 1, 3, 14, 16; 3 Pomeroy's Equity Jur. § 1211; Jones on Mortgages, § 874." Arnold v. Green, 116 N. Y. 566, 23 N. E. 1.

"Where money due upon a mortgage is paid, it may operate to cancel the mortgage or in the nature of an assignment of it, placing the person who pays the money, in the shoes of the mortgagee, as may best subserve the purposes of justice, and the just and true interest of the parties. The purpose, however, must be innocent, and injurious to no one." Bullard v. Leach, 27 Vt. 491.

Nor is this right of defendant to be subrogated to the position of the owner of the mortgage so paid affected by the fact that such mortgage was discharged of record.

"In applying the doctrine of subrogation, no attention should be paid to technicalities which are not of an insuperable character, but the broad equities should always be sought out so far as possible." Merchants' & Miners' Transp. Co. v. Robinson-Baxter-Dissosway Towing & Transp. Co., 191 Fed. 769, 113 C. C. A. 427.

As was pointed out by Judge Taft in a similar case (Cameron v. Holenshade, 1 Cin. Super. Ct. R. [Ohio] 83):

"If the [purchasers], when they paid off these mortgages, had taken an assignment of them, instead of canceling them, they could have stood upon them as a plank with which to escape from the wreck. We think that, in the eyes of equity, their relation to junior incumbrances is not affected by the ceremony of canceling the mortgages. By paying them, under the circumstances of this case, they became substituted to the position of the mortgagees, so far as such a substitution was necessary to protect them from the injustice of having a junior incumbrancer force them to pay for their property more than once."

The principles applicable here were involved and well stated in the case of Matzen v. Shaeffer, 65 Cal. 81, 3 Pac. 92. In that case it appeared that it had been arranged between the mortgagee, mortgagor, and appellant that she, appellant, should pay the sum of $3,500 for the satisfaction of the mortgage and a conveyance to her of the mortgaged premises by the mortgagor. This entire sum was handed to the mortgagee, who retained the amount due on the mortgage, and gave the residue to the mortgagor, whereupon the mortgagor executed a conveyance of the premises to appellant, and the mortgagee entered satisfaction of the judgment which had been previously obtained in an action to foreclose the mortgage. Previous to this the premises had been sold to the respondent under an execution issued upon a judgment recovered against appellant's grantor after the execution of the mortgage. But the time for redeeming the premises from said execution sale had not expired at the time of appellant's purchase. Respondent received a deed from the sheriff who sold the premises to him under said execution, and the question presented in the case was whether appellant, by paying and discharging the mortgage, subjected the land to the execution as a prior lien. Among other things, the court said:

"This presents a case in which the interest of the appellant required that the lien of the mortgage which she paid off should be kept alive. Her interest

can only be fully protected by regarding the transaction in which she paid off the mortgage as an assignment of it to her, and the lien has been kept alive for her security and benefit. 'In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem, for the purpose of protecting such interest, and who is not the principal debtor primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection.' 3 Pomeroy's Eq. Juris. § 1212. And this equitable result follows, 'even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record.' 3 Pomeroy's Eq. Juris. § 1211. If the respondent had purchased the premises while the satisfaction of the judgment of foreclosure remained of record, he doubtless would be protected. But the finding shows that he purchased the premises and received a certificate thereof, before any action to foreclose the mortgage had been commenced, and that he was made a party defendant, and served with summons in said action. And if it be held that the appellant became the equitable assignee of the mortgage, and as such was entitled to have the lien created by it kept alive for her protection, notwithstanding the satisfaction and discharge of it of record, the respondent will be in no worse position than he would if the judgment of foreclosure had been actually assigned to appellant when she paid it off. The fact of the entry of the satisfaction of the judgment could not have influenced him when he purchased the premises, because the action in which said judgment was entered had not then been commenced. He purchased the premises subject to the mortgage, and the rights which he thereby acquired could not be affected by an assignment of the mortgage, either in fact or by operation of law. We think this is one of the cases in which the satisfaction of a mortgage of record does not of itself prevent a court of equity from holding that the payment of it operated as an assignment of it to the person making the payment. There is nothing to indicate that appellant when she paid off the mortgage intended to purchase it, or to have it kept alive for her benefit. It does not appear that anything was said on that subject when she paid it off, and the mortgagee without her request satisfied it of record. But the payment was made for her benefit, or for that of respondent. If the payment under the circumstances operated as an equitable assignment of the mortgage to her, she gets the benefit of it. Otherwise the respondent. Now it is quite clear that she intended the payment of the mortgage should inure to her own, and not to his benefit. She had in view her own, and not his interest. And it is only by regarding the transaction as an assignment of the mortgage to her that her interest can be protected and maintained, and a court of equity will presume that it was intended she should reap the benefit of her investment. Equity regards that as done which ought to be done, and looks to the intent rather than to the form. There is no equitable ground on which the respondent could object to the mortgage lien being kept alive for the protection of appellant's interest, and the mortgage having been satisfied of record when it should have been assigned to the appellant, it was not error to vacate the satisfaction."

We are satisfied that, under the principles and authorities referred to, appellant, in paying the first mortgage, became the equitable assignee thereof. Did the subsequent conveyance to appellant of the interest of the mortgagor result in the extinguishment of the first mortgage by merger, and so promote the junior mortgage to seniority? We think not. As was said in Case v. Fant, 53 Fed. 41, 3 C. C. A. 418:

"The general rule is that a mortgage will not be merged or extinguished by a subsequent conveyance from the mortgagor to the mortgagee of the mortgaged premises unless such appears to have been the intention of the parties, and justice requires it."

In the language of the court in Duffy v. McGuiness, 13 R. I. 595:

"It is well settled that, in equity, where a mortgage passes by assignment to a purchaser of the equity of redemption, the two estates will not merge, if it is for the interest of the purchaser to keep them distinct, for protection against an intervening incumbrance, unless it be very clear that merger was intended."

The rule is thus stated in 27 Cyc. 1381:

"There will be no merger of estates where such a result would be productive of injustice to the mortgagee, or injurious to his interests, by depriving him of his rights which he could claim and exercise by keeping the two estates distinct; for, the result depending on his intention in the matter, if there is no proof of what such intention was, the law will presume that he intended what would best accord with his interests, and therefore will prevent a merger, in accordance with such presumed intention."

We think that the following language, used in the similar case of Bell v. Tenny, 29 Ohio St. 240, is applicable:

"The case, therefore, involves the question, whether a conveyance by the mortgagor of the mortgaged premises to the assignee of a senior mortgage, in consideration of the sum due on the mortgage, and a further sum paid, has the effect to extinguish the mortgage debt and the lien of the mortgage, as between such assignee and a junior encumbrancer. A merger is said to arise where a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate. Whatever may be the rule at law, * * * as between the mortgagor and mortgagee, or as between the mortgagee and an, innocent purchaser, it is well settled in equity that the conveyance of the mortgaged premises, by the mortgagor to the mortgagee, does not necessarily merge the mortgage nor extinguish the mortgage debt. The question generally depends upon the intention of the person in whom the two estates unite. If it is entirely indifferent to him whether the charge or encumbrance should be kept alive, a merger follows, as no beneficial purpose is to be subserved by keeping the two estates apart and subsisting. James v. Johnson, 6 John. Ch. (N. Y.) 424. He may, however, elect to merge or sink the charge in the conveyance, or he may elect to keep and continue it separate and distinct from the estate upon which it rests. Where the intent to merge or not to merge, is, with knowledge of the facts, expressly or unequivocally fixed and declared, the question is settled by such determination. But where there is no expressed intent, or the party is incapable of expressing any, the court looks into the circumstances, and implies an intent upon the part of the owner of the two interests to keep the charge, or incumbrance, subsisting, where its subsistence is beneficial to him, and where there are no equitable circumstances which ought to require its extinguishment."

In the light of the foregoing authorities and of the principles of equity and good conscience by which we are here governed, we are of the opinion that the appellee is entitled to be subrogated, as against the appellants, to the rights of the holder of the mortgage paid, which must be considered as kept alive for their benefit so far as may be necessary to protect their interests. We think that appellant is entitled, in equity, to no less, and that appellees cannot, in equity, complain. In the words of the court in the case of Shaffer v. McCloskey, 101 Cal. 576, 36 Pac. 196:

"It will be noticed that the judgment in this case does not weaken, any position which appellants were induced to take by any conduct of the respondent. It does not take away from them any money which they were induced to invest by any act or laches of respondent; nor does it lessen the

value of any security which he in any way induced them to take. They did not acquire any lien after the mortgage had been marked satisfied, and were not led by a clear record to invest money in the land. They took the deed of trust while the mortgage was in full legal existence, recorded and unsatisfied, and with perfect understanding that it was a valid prior lien, and they are merely seeking to take an advantage offered by an inadvertence or mistake of respondent. This is what equity will not allow."

We do not deem it necessary to discuss the objections made by appellants in the court below, but not argued in the briefs in this court, further than to say that we have carefully considered them, but agree with the conclusions of the District Court in its opinion overruling them, as reported in 208 Fed. 359, which conclusions and opinion we adopt as our own in this connection.

The decree of the court below will be set aside, with costs to appellants, and the case remanded for further proceedings not inconsistent with this opinion.