CITIZENS' NAT. BANK *v.* WERT and others.

*(Circuit Court, D. Indiana.* November 23, 1885.)

1. MORTGAGE—SUBSTITUTION OF MORTGAGEE.
   When a secured obligation has become due, the debtor may, by an agreement, without the consent of the creditor, substitute, in place of the latter, another person, who pays such creditor the amount due upon the obligation.
2. SAME—RIGHTS AND POWERS OF FIRST MORTGAGEE.
   A mortgagee cannot, by executing and recording a release, without consent, cut off the rights of a person who pays the obligation at its maturity, under an agreement with the mortgagor that he shall be substituted in the place of such mortgagee.
3. SAME—RIGHT OF THE SECOND MORTGAGEE TO OBJECT.
   The holder of a second mortgage cannot object to the substitution, in place of the prior mortgagee, of a party who, by agreement with the debtor, pays to such prior mortgagee the full amount due him upon the maturity of the obligation.

In Equity. Exceptions to master's report.

*Harris & Calkins,* for complainant.

*S. M. Shepard,* for defendants Wert.

*McDonald, Butler & Mason,* for defendants Robertson & Perry.

WOODS, J. Bill and cross-bills to foreclose three mortgages by their respective owners. The first and more important question to be considered is one of subrogation, or rather of conventional substitution, and arises upon the following facts: The defendant Lilian E. Wert, in June, 1877, accepted a conveyance of real estate, subject to a mortgage to the Middlesex Banking Company, of Connecticut, for $500, which she assumed to pay, and at the same time executed to her vendor, Russell, a second mortgage for $400, balance of purchase money; and this mortgage, which was not recorded, is owned by the Citizens' National Bank. In April, 1879, Mrs. Wert made a third mortgage upon the same property to Robertson & Perry, partners, to secure the payment of two notes of her brother to R. & P., one for $340 and the other for $345, due, respectively, in two and three years from date. In April, 1882, the first-named mortgage had become due; and, being without means to pay it, Mrs. Wert applied to Edwin A. Wert, brother of her husband, and agreed with him that he should loan to her the money necessary to make the payment, and should hold and keep alive the mortgage as security for the repayment of the loan. Accordingly, Edwin A. Wert furnished and paid the money to the agent of the mortgagee, who

refused to assign the mortgage to said Edwin as requested, but executed upon the mortgage bond a receipt, of the tenor following:

"Received, May 15, 1882, of Lilian E. Wert, per Edwin A. Wert, $569.16, the full amount, principal and interest, taxes, insurance on this mortgage, all of which is paid for and at the request of Lilian E. Wert.

[Signed] "M. E. VINTON & Co.,

"Agents for Middlesex Banking Co."

The banking company, by its agents, at the same time executed a formal release of the mortgage, to be put on record; but, instead of delivering it directly to Mrs. Wert, or to Edwin A. Wert, as they each desired and demanded, caused the same to be recorded. Upon learning this, Mrs. Wert and her husband, who had joined in the execution of the several mortgages made by her, executed and caused to be recorded a declaration and agreement, setting forth the facts in detail, to the effect that Edwin A. Wert was intended to be and should be subrogated to the rights of the banking company in the mortgage; and, in his cross-bill, said Edwin insists upon this right, and the master has allowed it.

On behalf of the holders of the junior liens, it is objected that this' mortgage has been paid and canceled of record, and therefore cannot be revived to their injury. But the question is, not whether or not a paid and extinguished security shall be put upon foot again, but whether or not, under the circumstances, it ever lost vitality. To hold that it has not, puts none of the objectors in a worse plight, and gives just force to the agreement between Mrs. Wert and Edwin Wert, who, instead of being an intruder or volunteer, supplied, at her request, the money which was paid to the mortgagee. No good reason has been suggested why, when a secured obligation has become due, the debtor may not, in this way, either with or without the consent of the creditor, obtain the substitution of a new and presumably more lenient creditor. In *Dering* v. *Earl of Winchelsea,* 1 Lead. Cases Eq. 154, it is said: "A stranger paying the debt of another will not be subrogated to the creditor's rights, in the absence of an agreement to that effect."

This implies that the substitution may be effected by an agreement to that effect; and that the creditor's consent is not essential seems clear on principle, if not, indeed, upon authority. By giving to her brother-in-law another mortgage upon the property, Mrs. Wert might have clothed him with the unquestionable power to pay off any prior incumbrance, and keep it alive for his own benefit; and if, in this and. other indirect ways, she could confer upon him or any stranger such right, as clearly she could, it would be unreasonable to say that the same end may not be accomplished by direct agreement with the one to be substituted, and without the consent of the creditor to be displaced. Indeed, a more striking illustration of the right to effect such a substitution in an indirect way is found in the facts of this case. Russell was the original debtor; but after and by virtue of

the agreement of Mrs. Wert made with him, without the consent of the banking company, to assume the debt, he became, as to Mrs. Wert, surety only, and as such had the clear right to pay the debt and be subrogated to the rights of the creditor in the mortgage. In such a case, the original creditor whose demand is due has no right to object, and neither should have in the case at bar, or in like cases, because the effect upon him and his interests is not different.

The seller of a note, it is true, incurs some liability, though the transfer be by delivery only; if nothing more, he warrants the genuineness of the note. But, plainly, this proposition has no application here, more than in unquestioned cases of purely equitable subrogation; because the transfer is not effected by a sale, nor other act of the creditor or holder of the note. Done without or against his consent, the transfer can in nowise create or imply liability on his part of any character whatever. In support of the view taken by the court, the following authorities were cited by counsel in argument. Dix. Subr. 166; Sheld. Subr. 286; *Brice's Appeal,* 95 Pa. St. 145; *Wilson* v. *Brown,* 13 N. J. Eq. 277; *Shreve* v. *Hankinson,* 34 N. J. Eq. 76; *Edwards* v. *Davenport,* 20 Fed. Rep. 756; *Levy* v. *Martin,* 48 Wis. 195; S. C. 4 N. W. Rep. 35.

Exceptions overruled.