STACKERL, Appellant, v. HEISER et al, Defendants (The Farmers and Merchants State Bank, Respondent).

(216 N. W. 876.)

(File No. 5938. Opinion filed December 20, 1927.)

*James M. Brown,* of Aberdeen, for Appellant.
*Theo. J. P. Giedt,* of Eureka, for Respondent.

MISER, C.  On March 15, 1919, defendant Heiser mortgaged two quarter sections of land in Campbell county to secure his note for $5,500, due November 15, 1924.  On March 27, 1919, said mortgage, which had been duly recorded, was assigned to the plaintiff and appellant, Stackerl.  Heiser believed, and in his mortgage warranted, said land to be free from incumbrances.  However, on October 23, 1913, the father of the defendant Heiser, being then the owner of one of said quarters, had mortgaged it to secure the payment of $1,200, due November 1, 1918.  On November 5, 1913, this mortgage, which had been duly recorded, was assigned to Anna Krebs by assignment duly recorded on March 2, 1914.  Thereafter, in 1918, by sundry mesne conveyances, the quarter so owned and mortgaged by his father became the property of the defendant Heiser, who now owns it.  In October, 1920, he discovered that the Krebs mortgage was a lien on one quarter section, being advised of that fact by the Farmers' & Merchants' State Bank, respondent, to whom the Krebs mortgage had been sent for collection.  While the defendant Heiser had apparently once known of such a mortgage, he had supposed that it had been paid by his father.  Appellant, Stackerl, had no knowledge, except

constructive knowledge, of the Krebs mortgage until, default having been made in the payment of the interest and taxes secured by his mortgage, he commenced this action in 1923 to foreclose his mortgage. In the summer of 1920, the Krebs mortgage, with the note for $1,200 secured by the same, the assignment to Anna Krebs, a satisfaction of mortgage signed by Anna Krebs on May 19, 1920, and the abstract of title to the land, was sent to the respondent Farmers' & Merchants' State Bank for collection; whereupon, at the request of the defendant Heiser, the bank forwarded to the agent of Anna Krebs the amount then due on said mortgage, and the bank retained and still holds the note, mortgage, assignment, and release, and the trial court specifically found that:

The said Heiser "requested the said bank to remit said amount as aforesaid, and it was agreed by and between the said Farmers' & Merchants' Bank of Eureka and the said J. F. Heiser that said bank should advance the money necessary to pay said note and remit said amount as aforesaid and should retain the said note and mortgage and release as security for the repayment by said Heiser to said bank of the amount so paid, advanced, and remitted; that said release should not be delivered or recorded until such repayment was made, and that, as between the said bank and the said Heiser until the said amount was repaid said bank by said Heiser, said note and mortgage should remain in full force and effect as security for the repayment of the amount so advanced and remitted by said bank, and that until such amount was repaid said bank should be and remain the owner of said note and mortgage, and should be subrogated to the rights of the said former owner of said note and mortgage; that the said Farmers' & Merchants' Bank of Eureka paid, advanced, and remitted under and in reliance on said agreement and thereby became the owner of said note and mortgage and was subrogated to all the rights of said former owner under said note and mortgage."

Heiser never repaid the bank, but, shortly after the bank advanced this money, it procured from Heiser his note for $1,200, and, on January 9, 1922, to secure the bank for their advance and to secure other indebtedness thereafter created, Heiser and wife executed their note for $3,000 and a mortgage to secure the same on three other quarter sections. Upon trial, the court found that appellant, Stackerl, was entitled to judgment against the defendant

Heiser for the foreclosure of his mortgage for $5,500, but that the interest of the bank upon the quarter covered by the Krebs mortgage was superior to the mortgage of appellant—the taxes paid by appellant being a first lien, however—and directed that the quarter covered by the Krebs mortgage be sold, subject to the lien of the Krebs mortgage held by the bank. From this judgment, and from the order denying the plaintiff's motion to modify the judgment or to grant a new trial, plaintiff, Stackerl, has appealed.

The sole question presented by the assignments of error herein is whether the bank is entitled to be subrogated to the rights of Anna Krebs under the mortgage held by her, under the foregoing facts. Appellant calls attention to the fact that the bank was not, at the time of the payment of the Krebs mortgage, a creditor of the defendant Heiser, and had no interest to conserve in the land covered by the mortgage; that it did not ask for and did not receive any assignment of the Krebs mortgage; and contends that the doctrine of conventional subrogation will not permit nor justify the judgment appealed from, and in support of these contentions cites Pollock v. Wright, 15 S. D. 136, 87 N. W. 584; Owen v. Interstate Mortgage Trust Co., 88 Okl. 10, 211 P. 87, 30 A. L. R. 816; Kahn v. McConnell, 37 Okl. 219, 131 P. 682, 47 L. R. A. (N. S.) 1189; 37 Cyc. 468, 471; Tynes v. Smith, 105 Okl. 100, 234 P. 637. However, while the case of Owen v. Interstate Mortgage Trust Co., supra, presents facts more like the facts of the case at bar, yet that case was decided upon the authority of the prior decision in Kahn v. McConnell. In Pollock v. Wright, supra, the facts were materially different from those of the case at bar; and, although the doctrine of subrogation was therein discussed, neither of the other members of the court concurred in that part of the opinion.

On the other hand, in Bank of Ipswich v. Brock, 13 S. D. 409, 83 N. W. 436, where the facts, so far as the payor of the prior lien was concerned, were much more like the facts in the case at bar than were the facts in Pollock v. Wright, supra, this court discussed the development of the doctrine of subrogation, both "legal subrogation" and "conventional subrogation," and held that the plaintiff therein was entitled to be subrogated to the rights of the original mortgagee, although plaintiff had paid off the first mortgage and had taken from the holder thereof a discharge of the

same, which discharge had inadvertently been recorded. "Conventional subrogation," says the Iowa Supreme Court in Kent v. Bailey, 181 Iowa 489, 164 N. W. 852, "arises by virtue of an agreement, express or implied, that a third person, or one having no previous interest in the matter involved, shall, upon discharging an obligation or paying a debt, be substituted in the place of the creditor in respect to such rights, remedies, or securities as he may have against the debtor." For, as was said by the New Hampshire court in Rossiter v. Sanaghiaro, 78 N. H. 484, 102 A. 759:

"The discharge * * * should be treated as an assignment, if that is the reasonable thing to do, for a discharge is always so treated when that is necessary to do justice."

Furthermore, where intervening lienholders have not been misled by a discharge of a prior mortgage, and they have not "done or omitted to do any act relying upon the recorded discharge, * * * their defense" to an action to foreclose the mortgage so discharged raises "no equities in their favor." Laconia Sav. Bank v. Vittum, 71 N. H. 465, 52 A. 848, 93 Am. St. Rep. 561. In the case last cited, the court said:

"The fact that the plaintiff was not the mortgagee of the original mortgage, but merely held it as pledgee, does not preclude it from the equitable relief sought in this action. It had in equity the rights of the mortgagee, one of which was that the mortgage should be deemed to subsist until the debt secured thereby was paid or discharged. * * * The mortgage note was pledged with the plaintiff, and this was sufficient to give it the benefit of the mortgage, whether technically assigned or not."

As further authority that respondent bank, in the case at bar, was entitled to be subrogated to the rights of an assignee of the Krebs mortgage, see Jones on Mortgages (7th Ed.) §§ 874c, 874d; Nestor v. Davis, 100 Miss. 199, 206, 56 So. 347; 41 C. J. 678; Holt v. Baker, 58 N. H. 276; 27 Cyc. 1293; Blume v. Weston, 131 S. C. 435, 127 S. E. 561; 19 R. C. L. 438; Everett v. Gately, 183 Mass. 503, 67 N. E. 598; Citizens' National Bank v. Wert (C. C.) 26 F. 294; 37 Cyc. 471. From the foregoing, the fact that respondent bank was not, at the time of the payment of the Krebs mortgage, a creditor of the defendant Heiser, and therefore had no interest to conserve in the land covered by the mortgage, that it did not ask for and did not receive any assignment of the Krebs mortgage,

does not in any wise prevent the respondent from being subrogated to the rights of a mortgagee under the Krebs mortgage. Indeed, in Bank of Ipswich v. Brock, supra, the bank, at the time it paid the first mortgage, no more intended than did the respondent bank in the case at bar to become an assignee of the same; and, in that case as in this, the holder of the second mortgage would benefit by the discharge of the first mortgage. Conventional subrogation, therefore, entitles respondent bank to be subrogated as equitable assignee of the Krebs mortgage, and the trial court committed no error in so holding.

■ By the judgment of the trial court, it was ordered that the property be sold in satisfaction of appellant's lien, but that the premises covered by the Krebs mortgage should be sold subject to the lien thereof. The trial court, however, did not determine the amount due upon the Krebs mortgage, nor were findings made thereon. In view of the fact that the defendant Heiser executed his note for $1,200 to respondent bank subsequent to the equitable assignment of the Krebs mortgage to respondent, and in view of the fact that said note for $1,200 was thereafter merged within a note for $3,000, the amount bid by a purchaser at the foreclosure of appellant's mortgage would necessarily be affected by whether interest has been accumulating upon the indebtedness, whether, under section 1572, Rev. Code, interest is due to respondent bank, and whether payments have been made either of principal or interest. Equity demands that prospective purchasers, as well as appellant, be advised of the amount of the prior lien, or at least how that amount may be determined, in view of the unusual facts of this case.

■■ Furthermore, the respondent has another fund, the $3,000 mortgage on the 480 acres, from which some contribution may be secured toward the payment of the Krebs mortgage. Indeed, the estate of the signer of the note might, under some circumstances, furnish a third source of payment to respondent. Appellant, however, has but one fund which may be applied to the payment of his debt, which fund may be insufficient, especially if there be no contribution to the payment of the Krebs mortgage from other sources. Upon a retrial, this may prove to be a proper case for the marshaling of assets (see Jones v. Mortgages [7th Ed.] § 875), which, no less than the doctrine of conventional sub-

rogation, of which respondent is herein made a beneficiary, is an equitable doctrine, which should be applied wherever available (38 C. J. 1367), or other opportunities may present themselves to the trial court to do full equity; for the doctrine that he who seeks equity must do equity applies to one who invokes the equitable remedy of subrogation (37 Cyc. 373).

The judgment is reversed, and the case remanded for further proceedings in harmony herewith.

CAMPBELL, P. J., and POLLEY, SHERWOOD, BURCH, and BROWN, JJ., concur.